# IN THE SUPREME COURT OF IOWA

No. 27 / 05-1400

Filed April 13, 2007

**CLIFFORD AYERS**,

> Appellant,

vs.

**D & N FENCE COMPANY, INC.
and EMC INSURANCE COMPANIES**,

> Appellees,

**UNITED FIRE AND CASUALTY COMPANY**,

> Intervenor-Appellee.

---

Appeal from the Iowa District Court for Linn County, Denver D. Dillard, Judge.

Employer and employee appeal the judgment of the district court affirming the decision of the workers' compensation commissioner. **AFFIRMED.**

David A. O'Brien of Willey, O'Brien, L.C., Cedar Rapids, for appellant.

Michael L. Mock of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee D & N Fence Company.

Anne L. Clark of Hopkins & Huebner, P.C., Des Moines, for appellee EMC Insurance Companies.

Chris Scheldrup and Charles A. Blades of Scheldrup Law Firm, P.C., Cedar Rapids, for appellee United Fire & Casualty Company.

**STREIT, Justice.**

Be careful what you wish for because it just might come true. Clifford Ayers injured his right knee in 1987 while working for D & N Fence Company. He was paid for an eighteen percent permanent disability to that lower extremity. In 2002, while still in the employ of D & N, Ayers injured his knee again. He filed a petition for workers' compensation alleging the 2002 injury caused additional disability to his right leg and resulted in a knee replacement surgery. D & N denied the allegations claiming Ayers's current disability was the result of his 1987 injury and had little or nothing to do with the 2002 injury. The commissioner agreed with D & N and awarded Ayers medical benefits. D & N cried foul claiming the commissioner should not have imposed liability upon D & N for additional medical expenses based on the 1987 injury when Ayers's petition alleged those expenses were necessitated by the 2002 injury.

We conclude the commissioner did not abuse his discretion when he imposed liability for the 1987 injury. D & N was well aware of the earlier injury and even made it the focus of the hearing. Moreover, we find D & N's insurer in 1987 did not have a constitutional right to notice regarding the possible imposition of liability based upon the 1987 injury. Any obligation to notify the insurer was that of D & N. Accordingly, we affirm the district court.

## I.     Facts and Prior Proceedings

Ayers was fifty-six years old at the time of the hearing. He had been working for his brother's company, D & N, for twenty-six years. He began his career as a fence installer and was promoted to foreman, yard

foreman, and finally manager of commercial sales, a position he has held since 1989.

Ayers's claim in this case involves an injury to his right knee. Ayers first injured his knee in 1987. He was carrying some materials through a doorway at work when he fell. This injury ultimately required arthroscopic surgery resulting in the removal of a significant amount of cartilage. Ayers was found to have sustained an eighteen percent impairment to his right leg, and accordingly was paid permanent partial disability benefits. In 2002, Ayers injured his right knee at a D & N job site when he stepped in a hole. He twisted his knee and felt significant pain. Ayers immediately left the job site and reported the injury to D & N. A few days later, Ayers saw his family doctor who referred him to Dr. Fabiano, an orthopedic surgeon.

Dr. Fabiano concluded Ayers suffered from a medial collateral ligament (MCL) strain. X-rays showed degenerative arthritis. Dr. Fabiano opined the MCL strain may have "aggravate[d] and startle[d]" Ayers's degenerative arthritis. He performed knee replacement surgery after more conservative treatments did not alleviate Ayers's pain. The surgery was a success and Ayers returned to work after seven weeks of recovery.

In April 2003, Ayers filed a workers' compensation claim for his March 2002 injury. Ayers sought reimbursement for his medical expenses ($51,174.62), seven weeks of healing period benefits at $599.97 per week, and 110 weeks of permanent partial disability benefits at the same rate. D & N and its insurer, EMC, disputed whether Ayers's 2002 injury caused any new permanent disability and the knee replacement surgery.

A deputy workers' compensation commissioner conducted a hearing concerning Ayers's claim. Ayers pursued two theories of recovery. First, he argued the March 2002 injury aggravated or accelerated a preexisting condition (degenerative arthritis) and caused both the knee replacement surgery and additional disability to his right leg. Alternatively, Ayers argued the knee replacement surgery and the additional disability were proximately caused by the cumulative effect of the 1988 surgery and fifteen years of walking over uneven terrain while working for D & N.

At the beginning of the hearing, the attorney for D & N and EMC stated:

> I believe there will be testimony . . . in this case that Mr. Ayers' problems with his right knee were ongoing from 1987 to 1988, and that essentially what we're looking at here is not a new injury, but it's simply a continuation of the '87, '88 injury. And it's our position, Your Honor, that all of this is really an ongoing part of the '87, '88 injury. And if you look at—It's really more analogous to *Smithart* [654 N.W.2d 891 (Iowa 2002)], where everything should be looked at as part of the first injury as opposed to any ongoing injury that we have.

The deputy commissioner ruled in favor of D & N finding Ayers "clearly had serious degenerative joint disease prior to March 25, 2002" and that he "failed to prove that the proximate cause of his need for the knee arthroplasty surgery was the work injury."

Ayers appealed the deputy's decision to the commissioner arguing *inter alia*:

> Even if the court concludes that Ayers' knee replacement surgery was not caused by trauma or cumulative trauma, the medical expenses related to the knee replacement surgery should still be paid . . . [because] the 1987 work related injury was a cause of Ayers' degenerative arthritis condition.

In his appeal decision, the commissioner succinctly ruled:

> Claimant alleged and the parties stipulated that the claimant sustained a traumatic injury on March 25, 2002, when he stepped in a hole. In 1988 claimant had surgery and cartilage was removed from his right knee as a result of a 1987 work-related injury with this same employer for which weekly compensation was paid. All the physicians in this case attribute the knee replacement surgery to the 1988 surgery for the 1987 injury. None clearly attribute the surgery to the 2002 injury. Claimant proved convincingly that the surgery was causally related to the 1987 injury but failed to carry the burden of proving that the 2002 injury was a substantial factor in the need for the surgery. Accordingly, claimant is entitled to recover the requested [medical] benefits under section 85.26(2) for the 1987 injury . . . but he is not entitled to recover weekly compensation for the 2002 injury.

The motion to reconsider filed by D & N and EMC alerted the commissioner to the fact United Fire & Casualty Company insured D & N at the time of the 1987 injury. D & N and EMC noted Ayers's petition did not allege entitlement to medical benefits arising from the 1987 injury, and urged any liability for such medical benefits should be relitigated by the proper parties. Ayers also requested a rehearing arguing the commissioner failed to address the issue of cumulative trauma.

In his decision on rehearing, the commissioner modified the decision by relieving EMC from liability and affirmed the remainder of his decision.

Ayers filed a petition for judicial review in Linn County. D & N filed a cross-petition for judicial review and United Fire filed a petition to intervene. After United Fire was allowed to intervene, it filed a motion to present additional evidence concerning insurance coverage and causation of Ayers's current disability and knee replacement surgery. The district court denied United Fire's motion and dismissed all issues pertaining to insurance coverage without prejudice.

Thereafter, the district court upheld the commissioner's ruling. It found the commissioner's findings of facts were supported by substantial evidence. The court rejected D & N's argument that the commissioner erred in ordering payment of medical benefits resulting from the 1987 injury when Ayers's petition alleged a 2002 injury date. The court also rejected United Fire's claim it had a right to notice and an opportunity to defend against the imposition of liability based upon the 1987 injury. The court agreed with the commissioner that any obligation to notify United Fire was D & N's obligation pursuant to Iowa Code section 87.10 (2001). The court stated Ayers

> is entitled to compensation and any dispute between his employer and the employer's insurance companies should not be a basis for delaying his rights. There was no "surprise development" which prejudiced D & N Fence . . . .

Ayers filed a notice of appeal. D & N and United Fire filed a notice of cross appeal. Ayers contends the commissioner erred in finding the 2002 injury did not cause permanent disability and the knee replacement surgery. He argues the commissioner erred by applying the wrong standards to determine whether the 2002 injury aggravated a preexisting condition or was a cumulative injury. He also claims the commissioner erred by admitting into evidence a second report by D & N's expert because it was created and produced after the case preparation completion date established in the agency's hearing assignment order. D & N and United Fire both argue the commissioner erred by awarding Ayers medical benefits for the 1987 injury because the issue was not properly presented to the commissioner for consideration.

## II.   Scope of Review

" 'We review the district court decision by applying the standards of the [Iowa] Administrative Procedure Act to the agency action to determine if our conclusions are the same reached by the district court.' " *Univ. of Iowa Hosp. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004) (quoting *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 612 (Iowa 2002)). The Iowa Administrative Procedure Act provides fourteen grounds upon which a reviewing court may reverse the decision of the workers' compensation commissioner. Iowa Code § 17A.19(10). The relevant grounds for this appeal are (1) the agency action is unconstitutional, (2) the agency action is not supported by substantial evidence, and (3) the agency action is an abuse of discretion. *Id.* § 17A.19(10)(*a*), (*f*), and (*n*). "The burden of demonstrating the required prejudice and the invalidity of agency action is on the party asserting invalidity." *Id.* § 17A.19(8)(*a*).

## III.   Merits

### A.   Whether Substantial Evidence Supports the Commissioner's Finding that Ayers's Knee Replacement Surgery was not Causally Related to the 2002 Injury

The commissioner found Ayers failed to prove the 2002 injury was a proximate cause of his disability and the knee replacement surgery. The commissioner also found Ayers's current disability was not the result of cumulative trauma because "[t]he record does not show that claimant could have avoided the knee replacement surgery if he had not worked for the employer after 1988."

Substantial evidence supports the commissioner's findings. *See Waters*, 674 N.W.2d at 95 (noting we may reverse the commissioner's findings only if they are not supported by substantial evidence in the

record); Iowa Code § 17A.19(10)(*f*)(1) (stating a decision of the commissioner is supported by substantial evidence if the evidence is of the "quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance"). Three physicians rendered opinions on the cause of Ayers's disability and knee replacement surgery: Dr. Fabiano, Dr. Riggins, and Dr. Stenberg. Causal connection is essentially within the domain of expert testimony. *Bradshaw v. Iowa Methodist Hosp.*, 251 Iowa 375, 383, 101 N.W.2d 167, 171 (1960). Dr. Fabiano was Ayers's treating physician and has a specialty in orthopedics. In the days following Ayers's 2002 injury, Dr. Fabiano diagnosed Ayers as having preexisting degenerative joint disease with an MCL strain. Dr. Fabiano noted x-rays showed significant degeneration with "near bone on bone" changes in the knee. On September 9, 2002, Dr. Fabiano performed Ayers's knee replacement surgery and his postoperative diagnosis was end-stage degenerative joint disease. Dr. Fabiano concluded the cause of the knee replacement surgery was Ayers's degenerative arthritis, not the 2002 injury. Dr. Riggins reviewed Ayers's medical records and agreed with Dr. Fabiano's conclusions.

Dr. Stenberg conducted an independent medical evaluation. His report opined "[t]he most likely cause of Mr. Ayers' degenerative arthritis condition would be his morbid obesity." Although Dr. Stenberg did later provide the only testimony supporting the claim that Ayers's disability and knee replacement surgery were causally related to the 2002 injury,

he did so only after Ayers's counsel inquired whether that injury exacerbated Ayers's preexisting degenerative arthritis.

The commissioner found Ayers had serious degenerative joint disease that had been symptomatic prior to March 25, 2002. Although Ayers sustained an injury on March 25, 2002, the commissioner found he failed to prove the injury materially aggravated his preexisting condition. Likewise, the commissioner rejected Ayers's cumulative injury argument. He found "[t]he record does not show that [Ayers] could have avoided the knee replacement if he had not worked for the employer after 1988. The cumulative trauma exposure was incidental in this case and did not materially change the outcome."

There is substantial evidence in the record to support the commissioner's factual findings. Moreover, the commissioner applied the correct legal standards in making these determinations. Ayers finds fault with the commissioner's statement that Ayers failed to prove "the 2002 injury *significantly changed the course of the preexisting injury* to bring about the need for knee replacement surgery." Ayers claims the commissioner applied "a higher, hyper-technical, and incorrect standard" in determining whether the 2002 injury materially aggravated his preexisting condition. Ayers is grasping at straws. A claimant has the burden of proving his work-related injury was a proximate cause of his disability. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 220 n.2 (Iowa 2006) (quoting *Freeman v. Luppes Transp. Co.*, 227 N.W.2d 143, 148 (Iowa 1975)). In order for a cause to be proximate, it must be a "substantial factor." *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991). The commissioner applied the correct standard and we have no quarrel with his analysis.

Likewise, we find the commissioner applied the correct standard in determining whether Ayers suffered a cumulative injury. The commissioner found Ayers failed to prove he "could have avoided the knee replacement if he had not worked for the employer after [his first knee surgery]." In order to be compensable, the cumulative trauma must be work related. Ayers offered no medical evidence supporting his contention that his disability was caused by work-related repetitive trauma.

**B.     Whether Substantial Evidence Supports the Commissioner's Finding that Ayers's Knee Replacement Surgery was the Result of the 1987 Injury**

Substantial evidence supports the commissioner's finding that Ayers "proved convincingly" his disability and knee replacement surgery were causally related to his 1987 work-related injury. Dr. Riggins opined Ayers's degenerative arthritis was the expected result of the 1988 arthroscopic surgery, which was required after Ayers's 1987 injury. Dr. Stenberg agreed Ayers's earlier surgery "played a factor" in his degenerative arthritis. Dr. Bickel, who performed the arthroscopic surgery after the 1987 injury, predicted Ayers would continue to have problems with his right knee and eventually require knee replacement surgery.

Having found substantial evidence to support the commissioner's ruling, we turn now to the consequences of his findings.

**C.     Whether the Commissioner Abused his Discretion in Considering the 1987 Injury as a Cause When Ayers Pled 2002 as the Date of Injury**

D & N argues the commissioner erred in awarding Ayers benefits for his 1987 injury because the issue was not properly presented to the commissioner for consideration. Whether Ayers's application for

workers' compensation benefits sufficiently informed his employer of the possibility of an award for the 1987 injury is a matter within the agency's discretion. *Waters*, 674 N.W.2d at 96. Thus, the proper standard of review is an abuse of discretion. *Id.*

Ayers's application for benefits alleged an injury date of "[o]n or about March 25, 2002." D & N argues Ayers should have been required to file a new application for benefits alleging 1987 as the date of the injury. In *Waters*, we reiterated "[a]n application for arbitration is not a formal pleading and is not to be judged by the technical rules of pleading." *Id.* at 96–97 (quoting *Coghlan v. Quinn Wire & Iron Works*, 164 N.W.2d 848, 850 (Iowa 1969)). Instead, "[t]he key to pleading in an administrative process is nothing more than opportunity to prepare and defend. The employer is to be afforded a substantive right to be at least generally informed as to the basic material facts upon which the employee relies as a basis for compensation." *Id.* at 97 (quoting James R. Lawyer and Judith Ann Graves Higgs, Iowa Workers' Compensation— Law & Practice § 21-7, at 231 (3d ed. 1999)).

The commissioner did not abuse his discretion in considering the 1987 injury as the cause of Ayers's disability and knee replacement surgery because D & N was well aware of Ayers's long-standing history of knee problems. In fact, D & N made the 1987 injury and subsequent surgery in 1988 an integral part of the hearing. Its attorney stated "what we're looking at here is not a new injury, but it's simply a continuation of the '87, '88 injury. And it's our position Your Honor, that all of this is really an ongoing part of the '87, '88 injury." D & N generated expert opinion testimony from Dr. Riggins to support this claim. Dr. Riggins was asked by defense counsel to review the Ayers file and opined "the

osteoarthritis present in [Ayers's] right knee was the expected result of the earlier [1988] surgical procedure." Defense counsel was so persuasive the commissioner adopted her argument. What D & N wished for came true. This is not a "surprise development" that prejudiced the employer. *Eberhart Constr. v. Curtin*, 674 N.W.2d 123, 125 (Iowa 2004). The commissioner correctly pointed out "[n]othing would be gained by requiring another proceeding explicitly based on the 1987 injury." While D & N may have been surprised by the *consequences* of its argument, this is not Ayers's problem. Even if we were to order a new hearing, D & N would be barred from arguing the 1987 injury did not cause Ayers's disability and knee replacement surgery because it already proved this very matter. *See generally Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573–75 (Iowa 2006) (discussing doctrine of judicial estoppel).

In 1988, Ayers was paid for an eighteen percent permanent partial disability to his lower right leg. Since he proved the knee replacement surgery performed in 2002 was necessary to treat the 1987 injury, Ayers is entitled to be reimbursed for the reasonable cost of that treatment. Iowa Code § 85.26(2). He is not entitled to any additional temporary or permanent disability payments because more than three years have passed since he received his last disability payments for the 1987 injury.[1] *Id.* § 85.26(1).

---

[1]On appeal, Ayers argues the commissioner erred by admitting into evidence a second report by Dr. Riggins which was produced after the deadline for discovery. Ayers complained the late-produced report was prejudicial because it "for the first time offers expert testimony with regard to the issue of apportionment" of disability between the 1987 injury and the 2002 injury. According to the report, Ayers's current 50% impairment of his lower right extremity should be reduced by 18%, which was the amount of his impairment prior to March 25, 2002. In other words, D & N used this report to argue any award of disability payments should be based on 32% impairment rather than 50%. Because we affirm the commissioner's determination Ayers is not entitled to additional compensation for disability, this issue is moot.

**D. Whether United Fire's Due Process Rights were Violated**

Finally, United Fire argues the commissioner violated its constitutional right to due process when it considered the 1987 injury. We review constitutional claims de novo. *Consumer Advocate v. Commerce Comm'n,* 465 N.W.2d 280, 281 (Iowa 1991).

United Fire did not participate in the hearing. It claims it had a right to notice and an opportunity to defend against Ayers's claim for additional workers' compensation benefits for the 1987 injury. *See Carr v. Iowa Employment Sec. Comm'n,* 256 N.W.2d 211, 214 (Iowa 1977) (stating the essential elements of due process are notice and an opportunity to defend). However, the insurer does not have a statutory or constitutional right to notice from the employee. The employee is only required to notify the employer of his claim. Iowa Code §§ 85.23, .24. The commissioner correctly stated any obligation to notify United Fire was that of D & N's. *See id.* § 87.10. The district court aptly held:

> Whether United Fire & Casualty Company must pay the medical expenses is not an issue which should be a concern for [Ayers]. He is entitled to compensation and any dispute between his employer and the employer's insurance companies should not be a basis for delaying his rights.

We agree. The commissioner did not violate United Fire's due process rights.

**IV. Conclusion**

Substantial evidence supports the commissioner's findings that Ayers's disability and knee replacement surgery were caused by the 1987 injury and not the 2002 injury. Consequently, Ayers is entitled to reimbursement for his medical expenses. The commissioner did not abuse his discretion in considering the 1987 injury when Ayers pled 2002 as the date of injury because D & N raised the 1987 injury as the

cause of Ayers's disability and knee replacement surgery. Finally, the commissioner did not violate United Fire's due process rights because any obligation to notify United Fire was that of D & N.

**AFFIRMED.**