# IN THE COURT OF APPEALS OF IOWA

No. 17-1525
Filed September 12, 2018

**CHRISTINE KEERAN,**
        Plaintiff-Appellant,

**vs.**

**QUAKER OATS COMPANY, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA and SECOND INJURY FUND OF IOWA,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McClellan,

Judge.


        Claimant seeks appellate review of an order affirming final agency action.

**AFFIRMED.**


        Robert R. Rush and Christoph P. Rupprecht of Rush & Nicholson, PLC,

Cedar Rapids, for appellant.

        Kent M. Smith of Scheldrup Blades Schrock Smith, PC, West Des Moines,

for appellees Quaker Oats Company and Indemnity Insurance Company of North

America.

        Thomas J. Miller, Attorney General, and Amanda R. Rutherford, Assistant

Attorney General, for appellee Second Injury Fund of Iowa.


        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Christine Keeran challenges the workers' compensation commissioner's denial of her claim for workers' compensation benefits. The agency record shows Keeran sought workers' compensation benefits for cumulative injuries to her knees allegedly sustained during the course of her employment with Quaker Oats. The deputy commissioner found Keeran failed to prove her knee injuries arose out of and in the course of her employment with Quaker Oats and denied her claim for benefits. Because the deputy commissioner found Keeran failed to meet her burden of proof on the issues of causation and compensability, the deputy commissioner concluded the remaining issues presented were moot. Keeran sought intra-agency review of the deputy's decision. The commissioner affirmed the deputy's decision in its entirety and adopted as final the relevant portions of the deputy's decision. The district court affirmed the commissioner's denial of Keeran's claim. Keeran timely filed this appeal.

I.

Our review is governed by the Iowa Administrative Procedure Act, Iowa Code chapter 17A. *See Lakeside Casino v. Blue*, 743 N.W.2d 169, 172 (Iowa 2007). The standard of review differs depending on the error alleged. *See Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). Factual challenges are reviewed for substantial evidence. *See id.* "Evidence is substantial if a reasonable mind would find it adequate to reach a conclusion." *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 150 (Iowa 1996). "If the error is one of interpretation of law, we will determine whether the commissioner's interpretation is erroneous

and substitute our judgment for that of the commissioner." *Jacobson Transp. Co.*, 778 N.W.2d at 196.

## II.

In her first claim of error, Keeran contends the agency applied the wrong legal standard to determine whether Keeran's injury and disability arose out of her employment with Quaker Oats. "When the agency exercises its discretion based on an erroneous interpretation of the law, we are not bound by those 'legal conclusions but may correct misapplications of the law.'" *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006) (quoting *Stroup v. Reno*, 530 N.W.2d 441, 443 (Iowa 1995)).

"Our workers' compensation statute provides coverage for 'all personal injuries sustained by an employee arising out of and in the course of the employment.'" *Id.* at 220 (Iowa 2006) (quoting Iowa Code § 85.3(1) (2001)). "This statutory coverage formula gives rise to four basic requirements: (1) the claimant suffered a personal injury, (2) the claimant and the respondent had an employer-employee relationship, (3) the injury arose out of the employment, and (4) the injury arose in the course of the employment." *Id.* "The failure of any one requirement results in a denial of a claim for benefits." *Id.* To prove an injury arose out of employment, the claimant must establish a "causal connection exists between the employment and the injury." *Id.* at 222. In addition to showing a causal connection between her employment and the injury, the claimant must prove her work-related injury is the proximate cause of her disability. *See Ayers v. D & N Fence Co.*, 731 N.W.2d 11, 17 (Iowa 2007). "In order for a cause to be proximate, it must be a substantial factor." *Id.* (citation omitted). If the alleged injury resulted from the

worsening, aggravation, or acceleration of a preexisting condition or injury, a claimant may recover so long as she can show a causal connection between the working conditions and her injury. *See Musselman v. Cent. Tel. Co.*, 154 N.W.2d 128, 132 (Iowa 1967). "In other words, the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of [her] employment." *Miedema v. Dial Corp.*, 551 N.W.2d 309, 311 (Iowa 1996).

We conclude the agency applied the correct legal standard to the question of causation. Here, the agency stated Keeran needed only to "show that those natural degenerative processes were accelerated, speeded up or aggravated by her work activities." This is a correct statement of the law. *See Musselman*, 154 N.W.2d at 132. In addition, the agency also stated Keeran was required to establish any injury was a proximate cause of her resulting disability. *See Ayers*, 731 N.W.2d at 17. This too was a correct statement of the law. We find no error in the agency's statement of the relevant legal principles.

III.

In her second claim of error, Keeran contends the agency's findings regarding medical causation were not supported by substantial evidence.

The record reflects the following. Keeran worked for Quaker Oats for thirty-nine years. She held various hourly positions during her employment, including: sweeper, packer, baghandler, machine tender, and package line operator. These positions required manual labor and repeated physical activity, including crawling, squatting, lifting and pulling heavy items, climbing ladders, kneeling, and standing.

Over the course of her employment, Keeran experienced pain in both of her knees. Keeran first met with Dr. Hugh MacMenamin in 2004. At that time, she indicated she had experienced knee pain for several years. Dr. MacMenamin diagnosed Keeran with arthrosis—a degenerative joint condition—in both knees.

She sought treatment again in 2009 when her primary-care physician referred her to Dr. Fred Pilcher. Dr. Pilcher noted Keeran did not suffer from a specific knee injury but recommended corrective surgery to treat her pain. Keeran did not undergo corrective surgery at that time. Keeran returned to Dr. Pilcher in mid-2010. Dr. Pilcher diagnosed Keeran with degenerative meniscus disease and degenerative arthritis in her left knee and meniscus tears and loose body in her right knee. In August of the same year, Dr. Pilcher removed Keeran from work due to her advanced knee pain although he did not attribute her knee condition to Keeran's work conditions. Later the same month, Dr. Pilcher performed arthroscopic surgery on Keeran's knees and removed a loose body from her right knee. Keeran returned to work in November without any restrictions. However, she continued to experience pain.

Keeran visited another physician, Dr. David Tearse, in September 2011. Dr. Tearse suspected Keeran's symptoms would not improve with additional surgery and recommended pool therapy instead. Keeran again visited her primary-care doctor in November and complained of her ongoing pain. The doctor referred Keeran to University of Iowa Hospitals and Clinics, Department of Orthopedics (UIHC) for another opinion.

Keeran treated with Dr. John Callaghan at UIHC in April 2012. Dr. Callaghan noted Keeran reported knee pain for the past three years. Dr.

Callaghan recommended knee-replacement surgery. In May, Keeran visited rheumatologist, Dr. Michael Brooks, who recommended knee-replacement surgery and noted:

> She would certainly improve in terms of knee symptoms were she to quit her present work and I would expect it if she gets [knee replacements] that they would last longer if she were not stressing them at her present type of work. I would encourage her to avoid overuse of the knees in terms of climbing, squatting, kneeling or even walking and standing more than she needs to for everyday function.

In June 2012, Dr. Sandeep Munjal began treating Keeran's knee pain, and Keeran agreed to a left knee replacement. Keeran's last day of work was September 25, 2012. She underwent knee-replacement surgery without complications in October. However, she received limited improvement and underwent two rounds of surgical manipulation of her left knee. Keeran's range of motion remained limited, and, in June 2013, Dr. Munjal recommended physical therapy and advised against "ladders or lifting heavy weights."

In October 2013, Keeran underwent an independent medical exam (IME) with Dr. Stanley Mathew. When presented with the question, "Has Christine sustained a cumulative injury to her knees arising out of and in the course of her physically demanding work at Quaker Oats over 39 years?" Dr. Mathew concluded, "I do believe Christine had sustained a cumulative injury to her knees arising out of course of physically demanding work at Quaker Oats for over 30 years." Keeran shared Dr. Mathew's IME report, as well as job descriptions from Quaker Oats, with Dr. Munjal. Dr. Munjal signed a letter confirming he considered the physical demands of Keeran's work to be a contributing factor to her knee injuries.

In June of 2014, Keeran underwent a second IME, at Quaker Oats' request, with Dr. Thomas Gorsche. Dr. Gorsche concluded, "while it is possible that work duties of going up and down ladders continuously could aggravate and contribute to developing arthritis, I believe in this situation it would be a minor contribution at best." He went on to state:

> In my opinion, since there is no specific injury that brought on her symptoms that they are more than likely related to her systematic risk factors such as her age, gender, ethnicity, genetic factors, and possibly dietary factors. It is medically possible that physical activity at work could have played a role in this, but in my medical opinion, that is unlikely. If it did play a role, in my opinion, it would be very minor.

Our resolution of Keeran's claim is controlled by the standard of review. "Medical causation 'is essentially within the domain of expert testimony.'" *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (citation omitted). "Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission*." Id.* at 844. The commissioner's findings may only be disturbed if they are not supported by substantial evidence. *Id.* at 845.

Here, the agency credited Dr. Gorsche's medical opinion over the other medical opinions. The commissioner concluded Dr. Gorsche presented the most thorough opinion accounting for all of the medical evidence presented. Although this court does "not simply rubber stamp the agency finding of fact," this court also does not declare evidence insubstantial "because different conclusions may be drawn from the evidence." *See id.* We will not reverse an agency decision where "the evidence supports a different finding than the finding made by the commissioner, but . . . the evidence [also] 'supports the findings actually made.'"

*Meyer*, 710 N.W.2d at 218 (quoting *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 649 (Iowa 2000)).  Here, the evidence supports the findings actually made.  The agency did not commit reversible error.

IV.

The agency applied the correct law, and its findings of fact are supported by substantial evidence.  We affirm the judgment of the district court.

**AFFIRMED.**