Linda R. ELLINGSON, Appellant,

v.

FLEETGUARD, INC., and Liberty
Mutual Insurance Company,
Appellees.

No. 97–1649.

Supreme Court of Iowa.

Sept. 9, 1999.

Rehearing Denied Oct. 29, 1999.

Mark S. Soldat, Algona, for appellant.

Tito Trevino of the Trevino Law Office, Fort Dodge, for appellees.

Considered by LARSON, P.J., and CARTER, SNELL, TERNUS, and

HARRIS,* JJ.

CARTER, Justice.

An injured worker, Linda R. Ellingson, appeals from a judgment following judicial review of a ruling of the Industrial Commissioner. She challenges the findings and conclusions concerning an alleged cumulative injury, the extent of permanent partial disability, benefits owed, and the denial of interest and penalty on alleged late payments. The employer, Fleetguard, Inc., and its workers' compensation insurance carrier, Liberty Mutual Insurance Company, have cross-appealed, challenging the court's determination of when the healing period ended and the extent of disability that the Industrial Commissioner found to have occurred from Ellingson's work-related injury.

The district court affirmed the Industrial Commissioner's decision in part, reversed it in part, and remanded the case to the commissioner for further findings. After review of the record and considering the arguments presented, we affirm the judgment of the district court in part, reverse it in part, and order the remand of the case to the Industrial Commissioner for further proceedings consistent with our opinion.

Ellingson's employment at Fleetguard commenced in 1968. She was nineteen years of age at the time. She had an eleventh grade education and her prior work history had been as a waitress and in other factory production jobs. On January 4, 1985, while working for Fleetguard, a forty-pound box fell on her head. She thereafter suffered from neck, head, and arm pain that required surgeries in March 1990 and December 1992.

A synopsis of Ellingson's alleged work interruptions following her January 4, 1985 injury includes those episodes described below. Our list may not include all such claims but is designed to highlight the substantial number of work interruptions that have been asserted by Ellingson. Within the commissioner's limitation of her disability claim to a single injury, it is disputed whether all of these alleged interruptions were attributable to the January 4, 1985 injury found to exist or an aggravation thereof. The commissioner made no dispositive factual findings on these disputed issues, a circumstance that prompted the district court to order a remand.

When the box struck Ellingson on January 4, 1985, she lost two working hours on that day and, in accordance with her doctor's directions, did not return to work until January 7, 1985. She was taken off work pursuant to doctor's directions between March 9, 1985, and April 17, 1985, due to neck, head, and arm pain. When she returned to work on April 18, 1985, she was placed on light duty involving the writing of tickets in a warehouse at a lower wage rate than her normal pay.

Between June 16, 1987, and August 16, 1987, Ellingson's doctor again took her off work due to continuing neck and arm pain. On August 17, 1987, she returned to work working four to six hours per day and was not medically authorized to return to eight-hour days until January 5, 1988. She was again taken off work by doctor's directions between May 3 and November 6, 1989.

On February 2, 1990, a diagnostic procedure revealed that Ellingson had a significantly degenerated disk at the C–6, 7 level. On March 5, 1990, this was surgically treated by an anterior cervical discectomy and fusion. Following this surgery, she was off work pursuant to doctor's orders until September 4, 1990. At this time, she returned to work on a limited basis.

On November 6, 1991, Ellingson's work activities were restricted by her doctor based on continuing neck and arm pain. Fleetguard then moved her to office work. Ellingson was again off work due to neck and arm pain between February 25 and March 15, 1992, and April 7 and April 13,

---

\* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

1992. On November 23, 1992, an MRI revealed a central protrusion of her C–5, 6 disk. This prompted another anterior cervical discectomy and fusion and accompanying bone graft performed in December 1992.

Ellingson returned to work on April 19, 1993, and from that time until May 24, 1993, worked only partial days. By May 24, 1993, her condition had again regressed, and she missed work from that date until July 25, 1993. Between July 26, 1993, and the arbitration hearing on September 15, 1993, she worked partial days except for three work days that she missed entirely.

The deputy industrial commissioner who heard the arbitration petition found that Ellingson had sustained a permanent partial disability of twenty percent of the body as a whole. The deputy also ordered healing-period benefits for those full days missed from work on account of the January 4, 1985 injury up to the time that Ellingson attained maximum medical improvement. Temporary partial disability payments were ordered for those days she worked less than eight hours under medical restriction prior to attaining maximum medical improvement. The deputy did not fix the times for which healing-period and temporary partial disability payments were owing and assumed that the parties would be able to work that matter out. The deputy denied Ellingson's claim for late-payment penalties under Iowa Code section 86.13 (1993). The Industrial Commissioner affirmed the deputy's decision except for an adjustment of the time for termination of the healing period. The commissioner also did not fix the times for which healing-period and temporary partial disability payments were owing.

On judicial review, the district court upheld the commissioner's award of permanent partial disability benefits, reinstated the deputy's determination of when the healing period terminated (an issue on which appellees have cross-appealed), and ordered a remand to the commissioner with directions to make specific findings concerning the times for which healing-period and temporary partial disability payments were owing. Claims for interest and penalties involving those payments were to abide those determinations of benefits owed. In so ruling, the district court made certain rulings concerning evidence that had been excluded by the commissioner. This will expand the record on remand. The commissioner's rejection of other interest and penalty issues raised by Ellingson was upheld. Other facts that are material to our opinion will be discussed in our review of the legal issues presented.

## I. *Ellingson's Appeal.*

Ellingson's appeal challenges: (1) the commissioner's finding, upheld by the district court, that she had not sustained a cumulative injury; (2) the commissioner's finding, upheld by the district court, that the extent of her permanent partial industrial disability was twenty percent of the body as a whole; (3) the calculation of benefits based on the percentage of permanent disability found to exist; (4) substantive and procedural rulings of the commissioner and court on temporary disability and healing-period benefits; and (5) failure of the commissioner or court to award interest and penalties for alleged late payment of benefits.

A. *The cumulative-injury claim.* Ellingson has claimed in both the administrative proceeding and the district court that she suffered two separate compensable injuries while working at Fleetguard. These alleged injuries are (1) the injury incurred from the falling box on January 4, 1985, and (2) a distinct and discreet cumulative neck injury from which an episode of disability was manifested on June 17, 1992. The Industrial Commissioner found that the only compensable injury established by the evidence was the January 4, 1985 injury.

The cumulative-injury doctrine was first recognized by this court in *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 373–74 (Iowa 1986). It relates to the type of injury that develops over time from performing work-related activities and ultimately produces some degree of industrial disability. For purposes of applying a statute of limitations, wage base, and other matters that depend on a time of injury, some date must be recognized as the time of injury if a cumulative injury is found to exist. Our cases hold that the date of a cumulative injury is deemed to be the time at which both the fact of disability and the causal relationship of the disability to the employment would be apparent to a reasonable person. *George A. Hormel & Co. v. Jordan*, 569 N.W.2d 148, 151 (Iowa 1997); *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992). This formula for recognizing a time of injury does not require any significant causal occurrence on the date of injury thus established. *Tasler*, 483 N.W.2d at 829.

In seeking to establish two work-related injuries, rather than one, Ellingson advances the following argument:

It just does not make sense, in light of the whole record, to conclude that a box falling on Ellingson's head in 1985, thereby compressing her degenerating neck, was the only substantial factor in causing the conditions which mandated both the 1990 and 1992 cervical surgeries. *Manifestly, aggravating work activities also were substantial factors.*

(Emphasis added.) Speaking with commendable candor, Ellingson freely admits that her cumulative-injury claim is designed to produce a new date of injury that will provide a higher wage base for computing her compensation.

To the extent that the evidence reveals a subsequent aggravation of Ellingson's January 4, 1985 injury, this is a relevant circumstance in fixing the extent of her permanent disability. Aggravating work activities were doubtless a causal factor with respect to the total degree of disability that she exhibited at the time of the hearing. It is clear, however, that she may not establish a cumulative-injury claim by merely asserting that her disability immediately following the January 4, 1985 injury was increased by subsequent aggravating work activities. That circumstance only serves to increase the disability attributable to the January 4, 1985 injury. To show a cumulative injury she must demonstrate that she has suffered a distinct and discreet disability attributable to post–1985 work activities rather than as an aggravation of the January 4, 1985 injury. In presenting that claim to the commissioner, she could only prevail if the commissioner, as primary fact finder, found that a factual basis for a cumulative-injury disability existed. The commissioner did not make that finding. The findings of the commissioner have the effect of a jury verdict. *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237 (Iowa 1981); *Paveglio v. Firestone Tire & Rubber Co.*, 167 N.W.2d 636, 640 (Iowa 1969).

Ellingson did not claim before the commissioner that the condition giving rise to the March 1990 surgery at the C–6, 7 level was not the consequence of the January 4, 1985 injury. By implication, she contended that it was. She did argue that the condition giving rise to the December 1992 surgery at the C–5, 6 level was attributable to a discreet cumulative injury that occurred subsequent to both the January 4, 1985 injury and the March 1990 surgery. In response to that claim, the commissioner expressly found:

While claimant seeks to assert a cumulative injury occurring on or about June 17, 1992, the treating physician opines that claimant's ongoing condition has its origins in her work incident of January 4, 1985. Claimant's continuing symptoms and her need for additional surgery and other medical care causally relate back to the January 4, 1985 work injury. Hence, claimant has not established a separate injury arising out of or

in the course of her employment on or about June 17, 1992.

Ellingson urges that the commissioner misinterpreted the testimony of her doctor. She correctly asserts that this witness testified that daily work activity after the January 4, 1985 injury and the March 1990 surgery could have been a substantial factor in producing the condition that prompted the December 1992 surgery. She argues that this expert testimony concerning a *possible* cause of the second surgery, buttressed by lay testimony as to the temporal proximity of specific work activities and the symptoms of her disability, support her contention that a cumulative injury occurred requiring the December 1992 surgery.

■ Based on the principles this court applies in review of agency findings, Ellingson's contention must fail. We do not determine whether the evidence might support a different finding but whether it supports the finding made. *Briar Cliff College v. Campolo*, 360 N.W.2d 91, 94 (Iowa 1984); *Ward*, 304 N.W.2d at 237–38. When it is the finding of the commissioner that the claimant has failed to establish a critical element of the claim, the claimant may only prevail if entitled to relief as a matter of law. *Ward*, 304 N.W.2d at 237–38. Our review of the record convinces us that it does not compel a finding in Ellingson's favor on her cumulative-injury claim. The district court was correct in upholding the commissioner's ruling on that issue.

■ B. *Whether the commissioner erred in determining the extent of permanent partial disability.* Ellingson advances several arguments that, in her view, demonstrate that the commissioner erred in determining the extent of her permanent partial disability. We consider only one.

■ As Ellingson points out, both the deputy industrial commissioner and the commissioner, in analyzing the extent of her industrial disability, placed considerable importance on her employer's efforts, following the January 4, 1985 injury, to accommodate her inability to work as she had in the past. In measuring a claimant's loss of earning capacity, which is the criteria for fixing the extent of permanent industrial disability, an employer's accommodation of an employee's inability to perform that person's usual work may only be considered if such accommodation would be available in the general labor market. *Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 18–19 (Iowa 1997). Otherwise, the loss of earning capacity must be based on the injured worker's present ability to earn in the competitive job market without regard to any accommodation furnished by that person's present employer. *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 157–58 (Iowa 1996); *Thilges v. Snap–On Tools Corp.*, 528 N.W.2d 614, 617 (Iowa 1995).

The commissioner made no finding concerning whether the type of work accommodations furnished to Ellingson by her employer would be available in the competitive job market. There appears to be no evidence in the record that would support an affirmative finding in this regard. We are forced to conclude on the present record that the commissioner erred in fixing Ellingson's industrial disability by relying on the employer's accommodation of her inability to perform her usual work activities. We set aside the commissioner's finding of a twenty percent permanent partial disability and remand the case to the commissioner for a redetermination of Ellingson's industrial disability under the standard set forth in *Murillo*, 571 N.W.2d at 18–19.

In *Murillo* we concluded that the legal rules restricting reliance on an employer's accommodation for purposes of establishing industrial disability had not been firmly established prior to that decision. Consequently, we provided in that case that the parties, following remand to the commissioner, would be accorded an opportunity to offer additional evidence of the claimant's ability to earn in the general job market. Because the critical determina-

tions in the present case also antedated our *Murillo* decision, we make similar provisions concerning the remand that is ordered here.

C. *Issues concerning termination of all temporary disability benefits at the time claimant attained maximum medical improvement and limiting of healing-period benefits to the loss of full days.* Ellingson urges that the commissioner erred in approving the termination of all temporary disability payments at the time she attained maximum medical improvement and in limiting the healing-period benefits to full days lost. We find that the commissioner acted correctly as to both matters.

Iowa Code section 85.33 provides in part as follows:

1. Except as provided in subsection 2 of this section, the employer shall pay to an employee for injury producing temporary total disability weekly compensation benefits, as provided in section 85.32, until the employee has returned to work or is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, whichever occurs first.

2. *"Temporary partial disability"* or *"temporarily, partially disabled"* means the condition of an employee for whom it is medically indicated that the employee is not capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, but is able to perform other work consistent with the employee's disability. "Temporary partial benefits" means benefits payable, in lieu of temporary total disability and healing period benefits, to an employee because of the employee's temporary partial reduction in earning ability as a result of the employee's temporary partial disability. Temporary partial benefits shall not be considered benefits payable to an employee, upon termination of temporary partial or temporary total

disability, the healing period, or permanent partial disability, because the employee is not able to secure work paying weekly earnings equal to the employee's weekly earnings at the time of injury.

Ellingson's employment at the time of the January 4, 1985 injury involved eight-hour days.

■ In harmonizing the two subsections of section 85.33, we are convinced that employees who return to work for partial days are limited to the benefits provided by the second subsection. This is the manifest meaning of the "[e]xcept as provided in subsection 2" language contained in the first subsection. It therefore follows from these conclusions that benefits payable under the first subsection are only available to employees who miss entire days of work.

■ We have recognized that temporary total disability compensation and healing-period compensation refer to the same condition. *See Pitzer v. Rowley Interstate*, 507 N.W.2d 389, 391 n. 1 (Iowa 1993) (healing-period compensation is a description given to temporary workers' compensation weekly benefits that precede an allowance of permanent partial disability). For this reason, we believe that the payment of healing-period compensation is subject to the same restrictions that apply to temporary total disability payments authorized by the first subsection of section 85.33. The commissioner was correct in limiting payment of healing-period benefits to full days lost.

■ Subsection 2 of section 85.33 is designed to cover the situation that was prevalent in Ellingson's return to work under medical limitations specifying a reduced workday. The commissioner correctly relied on subsection 2 of the statute in fixing the compensation to be paid for the partial days to which that statute applied.

■ Ellingson also contends that the commissioner erred by terminating all

temporary disability payments at the time that she attained maximum medical improvement. She argues that a healing period may commence and end, only to have another healing period commence when there is a retrogression in a worker's disability. Section 85.34(1) provides that the employer shall pay the employee compensation for a healing period beginning on the date of the injury and continuing until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of the injury. This statute obviously recognizes different situations that will result in a termination of healing-period benefits.

■ Ellingson's argument concerning a recommencement of the healing period based on a retrogression in a worker's disability has application, if at all, to situations where healing-period benefits have been terminated based on the employee's return to work prior to attaining maximum improvement of the injury. In contrast, once it has been established through a decision of the commissioner or a reviewing court that further significant improvement is not anticipated, all temporary disability benefits from a single injury are finally terminated to be followed by any permanent partial disability benefit payments that are established by the commissioner's order. *Pitzer*, 507 N.W.2d at 390–92.

The district court ordered a remand to the commissioner for specific findings concerning the period of time that Ellingson was entitled to healing-period benefits and temporary partial disability benefits. This remand was proper because there was a factual dispute concerning these claimed entitlements that the commissioner failed to resolve. The district court

also directed that Ellingson's claims for interest and statutory penalties with respect to the disputed healing-period and temporary partial disability payments should also be determined by the commissioner in connection with resolving what payments were owed. We confirm that directive by the district court.

■ We also note that Ellingson raised claims before the commissioner concerning interest and statutory penalties with respect to other benefit payments that have been made by appellees. Those claims involve issues of both late payment and underpayment.[1] The commissioner failed to adjudicate these issues, although they were raised by Ellingson and discussed in the commissioner's order. Ellingson complains of this failure on appeal. The commissioner's order indicates that it was not his responsibility to resolve these issues. Because these claims involve substantial rights of the parties, we conclude that it is the commissioner's responsibility to rule on these issues. Accordingly, we expand the district court's remand order to include resolution by the commissioner of all of Ellingson's claims for statutory penalties and additional interest. In considering the various interest and penalty claims on remand, the commissioner shall take note of the expanded record resulting from the district court's evidentiary rulings, which have not been challenged by appellees.

■ One penalty issue raised before the commissioner does not require a remand. Ellingson urged that she was entitled to a statutory penalty for the delay in making permanent partial disability payments. The commissioner found otherwise. Ellingson challenges that determination on this appeal. We are satisfied that the commissioner's ruling on this issue was correct.

Based on findings by the commissioner that we have already approved, Ellingson did not attain maximum medical improve-

---

1.  Underpayment may be the basis for imposing penalties under section 86.13 as well as late payment. *Robbennolt v. Snap–On Tools Corp.*, 555 N.W.2d 229, 237–38 (Iowa 1996).

ment from the January 4, 1985 injury until April 13, 1993. She argues that this occurred even later than found by the commissioner. Permanent partial disability benefits are not payable until the healing period has ended. Iowa Code § 85.34(2). Ellingson's factual arguments for delayed payment penalties all relate to times prior to April 13, 1993. These penalty claims were properly denied by the commissioner.

D. *Interpretation of Iowa Code section 85.34(2)(u).* Ellingson urges that her permanent partial disability payments should be computed by multiplying the partial disability percentage by the compensation value of a total disability. Iowa Code section 85.34(2)(u) specifies that "the compensation [for permanent partial disability] shall be paid during the number of weeks in relation to five hundred weeks as the disability bears to the body of the injured employee as a whole." That statute was the basis for the commissioner's calculations. An argument similar to Ellingson's was advanced in *Myers v. F.C.A. Services, Inc.,* 592 N.W.2d 354, 357 (Iowa 1999), and rejected by this court. We reach a similar result in the present case. We find no error in the commissioner's application of section 85.34(2)(u).

## II. *Appeal of Employer and Insurance Carrier.*

On their appeal, the employer and insurance carrier challenge the district court's alteration of the date on which the commissioner found that healing-period benefits should terminate. The deputy commissioner had fixed that date as August 11, 1993. The commissioner found that healing-period benefits should terminate on April 13, 1993. The district court overturned the commissioner's ruling on that issue and reinstated that of the deputy.

On our review of this issue, we are convinced that the commissioner's finding that April 13 was "the date on which claimant reached maximum medical improvement" was supported by substantial evidence. Consequently, we reverse the

order of the district court concerning the termination of healing-period benefits. We uphold the commissioner's ruling fixing the time of termination as April 13, 1993. Ellingson's permanent partial disability benefits should therefore commence on April 14, 1993.

Another issue raised on the cross-appeal is a challenge to the commissioner's finding of a twenty percent industrial disability to the body as a whole that was upheld by the district court. Based on our disposition of Ellingson's appeal, that issue is now moot.

We have considered all issues presented. We reverse the order of the district court upholding the commissioner's determination of permanent partial disability and remand that issue to the commissioner. We reverse the district court's order altering the date on which the healing period ended and uphold the finding of the commissioner on that issue. We affirm the district court on all other issues including its remand order, which shall be expanded as provided in Division I(C) of this opinion. Costs on appeal are assessed equally between the parties.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**