MANSFIELD, Justice
(concurring in part and dissenting in part).
I join most of the court’s well-reasoned opinion, but differ as to when permanent partial disability benefits should begin.
I would affirm the commissioner’s determination that David Evenson “achieved maximum medical improvement [MMI] on November 29, 2011” and that permanent partial disability benefits should commence on November 30 of that year. In declining to uphold this determination, my colleagues overturn existing law which had prohibited claimants from receiving temporary partial disability benefits and permanent partial disability benefits for the same injury over the same time period. See 15 James R. Lawyer, Iowa Practice Señes: Workers’ Compensation § 13:2, at 141 (2015).
My colleagues do not dispute that substantial evidence supports the factual finding of a November 29, 2011 MMI. Instead, they reverse on a legal ground — essentially by dramatically expanding the prior holding of Waldinger Corp. v. Mettler, 817 N.W.2d 1 (Iowa 2012). Prior to Waldinger, the law had been that MMI strictly demarcated the line between (1) the termination of temporary partial disability or healing period benefits and (2) the commencement of permanent partial disability benefits. See Ellingson v. Fleetguard, Inc., 599 N.W.2d 440, 447 (Iowa 1999), overruled by Waldinger, 817 N.W.2d at 8.
In Waldinger, we carved out an exception for the situation when the employee needs another surgery for his or her work-related injury after attaining MMI. See 817 N.W.2d at 8. There the claimant had attained MMI for an ankle injury in 2005, but missed three months of work in 2007 due to arthroscopic surgery for the same work-related injury. Id. at 3-4. The court of appeals held that the claimant was not entitled to healing period benefits for the time he missed work in 2007 because he had already achieved MMI in 2005. Id. at 4. This court disagreed, concluding that “the phrase ‘a healing period’ was not intended by the legislature to limit healing period benefits to a single period of temporary disability per injury.” Id. at 8. Thus, we overruled Ellingson in part, holding:
We now conclude our interpretation in Ellingson of section 85.34(1) as a categorical prohibition of an award of healing period benefits for disability from work occurring after the date MMI has been achieved was erroneous, and we therefore overrule it.
Id. We continued,
When, after achieving MMI, a claimant is rendered temporarily disabled from work, as Mettler was, as a consequence of surgical treatment provided under section 85.27 for a work-related injury, a new healing period begins under section 85.34(1).
Id. We added, “We see no principled reason why Mettler, or any similarly situated claimant, should be disqualified from a healing period remedy when ordinary and necessary medical care for a work-related injury temporarily removes them again from the work force.” Id. at 8-9.
Today’s decision is an illogical and ill-considered expansion of Waldinger. Contrast the Waldinger facts with the situation here. In the present case, Evenson suffered a work-related left elbow injury in May 2010. He was off work in September 2010 and again from April to June 2011. He achieved MMI in November 2011. The commissioner awarded Evenson the following:
*377 (1) healing period benefits for the two time spans he was off work in September 2010 and April-June 2011,[8]
(2) temporary partial disability benefits compensating for various time periods between June 2010 and October. 2011 prior to the attainment of MMI when Evenson was working at his prior job but could not earn overtime compensation because of his condition, and
(3) permanent partial disability benefits as of the attainment of MMI in November 2011.
Thus, unlike Waldinger, this is not a case where the claimant achieved MMI, became eligible for PPD benefits, but then had a subsequent episode where he missed time from work because of medical treatment for the same work-related injury. Rather, the claimant — prior to attaining MMI — had a combination of time off work and reduced hours for which he already has been given compensation through a combination of healing period benefits and temporary partial disability benefits. I see no unfairness in the outcome approved by the commissioner. Yet the court now holds that Evenson is also entitled to PPD benefits dating back to when he returned to work on September 20, 2010.
There are several problems with what the court has done. To begin with, it is inconsistent with the statutes. Iowa Code section 85.34(1) (2011) regarding “healing period” provides that the healing period begins on the first day of disability following the injury and continues
until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury.
Section 85.34(2) provides, “Compensation for permanent partial disability shall begin at the termination of the healing period provided in subsection 1.” Id. § 85.34(2). Section 85.33(2) provides that temporary partial disability benefits are “payable, in lieu of temporary total disability and healing period benefits, to an employee because of the employee’s temporary partial reduction in earning ability as a result of the employee’s temporary partial disability.” Id. § 85.33(2).
Putting these statutes together, they indicate that when an employee is receiving temporary partial disability benefits because he or she is working fewer hours due to a workplace injury, this time period is regarded as part of “the healing period” for section 85.34 purposes, and only at the conclusion of this overall healing period would permanent partial disability benefits commence. That is why the temporary partial benefits are “in lieu of’ healing period benefits. See id. In fact, the words “in lieu of’ in the statute make no sense otherwise. In short, when an employee like Evenson suffers a workplace injury and thereafter has a combination of time off work and reduced hours until he achieves MMI, that entire pre-MMI time period is treated as “the healing period” for purposes of determining when PPD benefits commence.
The majority’s reading of the statutes also means an employee can have a “temporary” disability and a “permanent” disability based on the same injury at the same time. This seems to be a very incongruous reading of the statutes and one that should be avoided. Additionally, the majority fails to explain why the legislature expressly provided that an employee *378 could receive medical and death benefits “in addition to” PPD benefits, see id. § 85.34(2) (“The compensation shall be in addition to the benefits provided by sections 85.27 and 85.28.”), but did not say an employee could receive temporary disability payments in addition to PPD benefits, Surely, if the legislature wanted to indicate that an employee could,receive temporary partial disability benefits and PPD benefits covering the same time, period, it, would have expressly said so, given that it made express reference to the availability of benefits under sections 85.27 and .85.28— situations where the case for awarding additional benefits is far clearer.
As I’ve already suggested, the majority’s approach leads to a questionable policy outcome — namely, the duplication of benefits. Evenson has already been awarded temporary partial disability benefits for the time period before November 2011 to compensate for any “partial reduction of earning ability” during that time. See Iowa Code § 85.33(2). Now the court wants the commissioner to go back and further, compensate him for any loss of earning capacity during the same period. Until now, our law had been, clear:
In this particular case, Presthus was receiving both temporary partial and permanent partial benefits .for the-same injury. It follows that, in order to receive both benefits at the same time as Presthus suggests, Presthus’ ..injury would have to cause him to be both temporarily and permanently disabled at the same time. We are not persuaded that such a result is attainable. We conclude Presthus cannot receive temporary partial and permanent partial benefits .for the same injury at the same time.
Presthus v. Barco, Inc., 531 N.W.2d 476, 480 (Iowa Ct.App.1995). In Presthus, no PPD benefits commenced until “after all of the "temporary partial benefits had been paid” — exactly the rule that T contend should be followed here. Id.
Presthus is not the only decision that the court overrules today. The court also discards the analytical framework we set forth in considerable detail in one of our own opinions gust six years ago. In 2010, in Bell Brothers Heating & Air Conditioning v. Gwinn, we explained the interplay between temporary and permanent disability awards.. 779 N.W.2d 193, 200-01 (Iowa 2010). We said,
Although early workers’ compensation law made no distinction between temporary and permanent disability, our workers’ compensation law now provides for separate awards based on the temporary and permanent nature of a disability. The difference between awards for temporary and permanent disability can be best illustrated by considering a typical industrial injury.
Normally, an industrial injury gives rise'to a period of healing accompanied by loss of wages. During this period of time, temporary benefits are payable to the injured worker. Generally, these benefits attempt to replace lost wages (and provide medical and hospitalization care) consistent with the broad purpose of workers’ compensation: to award compensation (apart from medical benefits), not for the injury itself, but the disability produced by a physical injury. In Iowa, these benefits are spelled out in Iowa Code sections 85.33, 85.34, and 85.37....
... Any disability that remains after stabilization of the condition gives rise to “either a permanent partial or a permanent total award.” In other words, maximum physical recovery marks the end of the temporary disability benefits,.and at that point, any permanent disability benefits- can be considered.
*379 This review of temporary and permanent disability awards reveals that a fundamental component of a permanent impairment is stabilization of the condition or.at least a finding that the condition is “not likely to remit in the future despite medical treatment.” In other words, stabilization is the event that allows a physician to make the determination that a particular medical condition is permanent.
The symmetry of the process reveals that a claim for permanent disability benefits is not ripe until maximum medical improvement., has been achieved. Until that time, only temporary benefits are available.
Id. (citations omitted) (first quoting 4 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 80.03[2], at 80-6 (2009); and then quoting American Medical Association, Guides to Evaluation of Permanent Impairment 27 (6th ed.2008)). Bell Brothers clearly forecloses the interweaving and intermixing of temporary and permanent benefits approved by today’s opinion. Regrettably, the court today fails even to discuss Bell Brothers.[9]
Instead of Bell Brothers, the court cites to a thirty-year-old decision—Teel v. McCord, 394 N.W.2d 405 (Iowa 1986). Several important points about Teel should be noted. First, the facts of Teel are different from those before us today in that there were no temporary partial disability benefits. Id. at 406. There were simply a series of healing periods when the employee was off work. Id. Furthermore, in Teel the PPD interest payments were suspended during each of those healing periods, the upshot being that PPD benefits were not due during those periods. Id. Today, by contrast, the court- decides that PPD should be paid continuously once the first healing period ends. In this respect, today’s decision is inconsistent with Teel. Third, the only argument the employer raised in Teel■ was the legally insufficient one that interest on PPD benefits should commence as of the date of the aivard. Id. Thus, none of the issues involved in this case were squarely presented. Lastly, the language from Teel on which the majority relies today is simply irreconcilable with Bell Brothers.
In the .end, today’s opinion rests on a nonsequitur. The court concedes that its approach results in multiple healing periods prior to MMI, not just.one healing period, even though the statute refers to “the” healing period. See Iowa Code § 85.34(2). This means the court must determine which healing period should be selected for. the.. commencement of PPD benefits. The court then states the end of the first healing period must be chosen because each healing period ends as soon as the employee returns to work. Why? The former conclusion does not follow from the latter. To put it simply, the court has confused two issues: (1) when each healing period ends and (2) which healing period must be chosen for commencement of PPD benefits.
The worker’s compensation statutes, Presthus, Bell Brothers, fairness, and logic all point in one direction: When an employee suffers an industrial injury resulting in a combination of time off work and reduced hours, and then attains MMI, the employee should receive temporary partial disability and healing period benefits for *380 the pre-MMI timeframe, and PPD benefits commencing thereafter.
The court’s opinion is not clear, but to the extent the court is indicating that penalty benefits could be awarded on any of the PPD benefits, I also disagree with that conclusion. Having modified the law as to when PPD benefits commence, it would be unfair for the court to subject the employer to a penalty for its lack of clairvoyance regarding the court’s own modification of the law. See Iowa Code § 86.13(4) (authorizing a penalty when there was a denial or a delay of payment “without reasonable or probable cause or excuse”). The commissioner did not award any penalty on the PPD benefits, but the court today upholds a penalty on “the delayed and underpaid benefits” and remands for “a recalculation of the amount of the penalty and interest owed based on the new healing period and PPD dates.”
While I join the rest of the court’s opinion, I fear that the foregoing aspects of today’s decision misread the statutes, unnecessarily overturn precedent, will produce confusion and double recoveries, and will ultimately require a legislative fix.
WATERMAN, J., joins this concurrence in part and dissent in part.

. As noted by the majority, clarification is needed regarding September 3-7, 2010.

. Bell Brothers highlights the practical problems with today’s decision. The court holds today thát PPD benefits should have commenced when Evenson first resumed working in September 2010. But how was anyone to know then that Evenson had suffered a permanent disability? That is why the law allows temporary partial disability benefits to compensate for a reduction in income until it is determined that MMI has been attained.