5/1/2020 10:39:40 AM

**IN THE SUPREME COURT OF IOWA**

No. 18–1051

Filed May 1, 2020

**ANITA GUMM,**

Appellant,

vs.

**EASTER SEAL SOCIETY OF IOWA, INC., AMERICAN COMPENSATION, INS. CO.,** and **SFM COMPANIES,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

An employer seeks further review of a court of appeals decision that reversed a district court order upholding the workers' compensation commissioner's denial of a cumulative injury claim. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Joseph S. Powell of Thomas J. Reilly Law Firm, P.C., Des Moines, for appellant.

Lee P. Hook and Tyler S. Smith of Peddicord Wharton, LLP, West Des Moines, for appellees Easter Seal Society of Iowa, Inc., and SFM Companies.

Thomas D. Wolle of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee American Compensation Ins. Co.

**MANSFIELD, Justice.**

This case presents the question whether a workers' compensation claimant who receives disability benefits for a traumatic injury can later recover disability benefits on a separate cumulative injury claim if the cumulative injury is based solely on aggravation of the earlier traumatic injury. Normally a claimant in this situation can ask that the earlier traumatic injury claim be reopened. Here the claimant was unable to pursue review-reopening because the three-year statute of limitations for review-reopening had passed.

Like the workers' compensation commissioner and the district court, we conclude that a separate cumulative injury claim is not available in these circumstances. Such a claim would allow the employee to bypass the parameters for review-reopening established by our legislature. It would also be inconsistent with our precedent. *See generally Ellingson v. Fleetguard, Inc.*, 599 N.W.2d 440 (Iowa 1999), *overruled on other grounds by Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 8 (Iowa 2012). Accordingly, we vacate the decision of the court of appeals, which ruled to the contrary. Instead, we affirm the order of the district court denying the claimant's petition for judicial review.

## I. Facts and Procedural History.

Anita Gumm began employment as a custodian with Easter Seal Society of Iowa in April 2008.[1] At that time, Gumm was fifty-six years old. She possessed a ninth-grade education, and her prior work experience consisted of laundry work, housekeeping, and janitorial tasks. Gumm's duties at Easter Seals required her to stand on her feet and walk most of

---

[1]We will refer to the respondent employer and the respondent workers' compensation insurance carriers collectively as Easter Seals.

the day, and her job description required her to be able to "bend, stoop, twist, and lift, as well as move a minimum of 80 pounds."

While working on October 28, 2008, Gumm slipped on wet grass and fractured her right ankle. She was taken to the emergency room where she underwent a procedure and was referred to a podiatrist, Dr. Eric Barp, D.P.M. Gumm remained in Dr. Barp's care for the rest of the timeline in this case. Dr. Barp performed an open reduction and internal fixation (ORIF) on Gumm. By December 11, Dr. Barp opined that Gumm was doing well and "had radiographically healed." On January 15, 2009, Dr. Barp found Gumm had reached maximum medical improvement (MMI), and released her to return to full work activity with no restrictions. Dr. Barp later opined Gumm sustained a permanent impairment of seventeen percent of her lower extremity as a result of the October 28, 2008 injury. He also noted she might eventually need to have hardware surgically removed from her ankle.

Easter Seals paid Gumm 37.4 weeks of permanent partial disability benefits based on Dr. Barp's rating. The last payment occurred on May 21, 2010.

Unfortunately, Gumm continued to suffer right ankle pain for years, and had to undergo multiple surgeries and procedures. On April 22, 2010, Gumm saw Dr. Barp for pain and stiffness in her right ankle. X-rays showed the fracture had properly healed, but as Dr. Barp had predicted, he needed to surgically remove the hardware from Gumm's ankle. Following that surgery, on May 19, Gumm returned to full work activity with no restrictions. But at a follow-up appointment on June 22, Gumm reported she still had ankle pain that "came and went."

Approximately a year and a half later, on January 30, 2012, Gumm returned to Dr. Barp with right foot pain. Dr. Barp opined that the pain

could be a coincidence or the result of Gumm altering her gait because she had been compensating for her ankle pain. On March 6, Gumm reported pain in her right ankle, foot and toes. The ankle hurt during the workday to the point where she sometimes dragged her right foot to avoid bearing weight on it. Dr. Barp treated her with an injection. About a month later, Gumm reported that the injection had relieved some of her pain, but her pain was still so severe at times she could not walk. On April 11, Dr. Barp performed an ankle arthroscopy. Based on the surgery, Dr. Barp diagnosed that Gumm suffered from "posttraumatic arthritis of the ankle following [her 2008] ORIF and had developed synovitis." After a brief period of limited work activity, Gumm returned to full work activity on May 3 with no restrictions.

On June 1, Gumm reported continued issues with her ankle. Dr. Barp directed Gumm to take anti-inflammatory drugs. One month later, Gumm felt no pain and was doing well. Dr. Barp opined Gumm had completely healed and "thus warrant[ed] no additional rating of permanent impairment."

The following year, on May 16, 2013, Gumm disclosed to Dr. Barp that she had been suffering from right ankle pain for months. X-rays showed she had degenerative joint disease. Dr. Barp treated her with an injection. The injection provided limited relief, and a CT scan showed she had posttraumatic degenerative manifestations. Meanwhile, in August 2013, Gumm provided notice to Easter Seals that she intended to retire on February 28, 2014, upon reaching sixty-two years old.

On October 23, 2013, Dr. Barp performed arthroscopic right ankle arthrodesis with fluoroscopy fusion surgery. Gumm took FMLA leave and eventually returned to work on January 13, 2014. Dr. Barp restricted her to four-to-five hours of work per day. Later that month, Gumm saw a

personal physician, Bradley Meyer, D.O., who stated Gumm's lower back pain had worsened since her return to work on January 13. He believed much of the lower back and shoulder pain stemmed from her compensating for her right ankle pain. Dr. Meyer treated Gumm, referred her to physical therapy, and excused her from work from January 24 through February 16.

On February 14, 2014, Gumm disclosed to Dr. Barp that her ankle "felt good," but she had lower back pain and pain in her right knee. Like Dr. Meyer, Dr. Barp concluded this pain resulted from gait changes Gumm had made in response to her ankle pain and arthrodesis surgery. Dr. Barp told Gumm to undergo physical therapy and, for the first time, imposed work restrictions, specifically against mopping and lifting anything over five pounds. When Gumm returned to work, Easter Seals could not accommodate her restrictions. Consistent with the notice she had given Easter Seals the previous August, Gumm retired from Easter Seals on February 28.

In April, Gumm began receiving Social Security Disability benefits (SSDI) of $661.00 per month. In July, she began working as a housekeeper for an assisted living center, cleaning resident rooms and restrooms. She was still working there on the date of her workers' compensation hearing. The work was less physically demanding than what she had to perform for Easter Seals.

On February 24, Gumm filed two workers' compensation petitions. In the first petition, she claimed she had sustained an acute injury on October 28, 2008, and admitted the injury's statute of limitations window had expired. *See* Iowa Code § 85.26 (2007). In the second petition, Gumm claimed she had sustained a cumulative injury with three potential injury dates: March 6, 2012, May 16, 2013, or January 15, 2014. Gumm sought

compensation for permanent industrial disability benefits, medical benefits, and costs.

The deputy commissioner heard Gumm's case on March 12, 2015. On February 18, 2016, the deputy filed her arbitration decision. She found Gumm had sustained sequelae to her October 28, 2008 injury but not a distinct and discrete injury thereafter. As she explained, "Dr. Barp's opinion does not establish claimant suffered disability gradually, reaching an injurious condition at some later point. Rather, Dr. Barp's opinion confirms claimant suffered an injury and disability, and through further work activities, the disability increased." The deputy went on,

> [Claimant's] continued work activities may have played a role in aggravating the right ankle condition and resulted in the need for further treatment[;] however, by the standard of the *Ellingson* case, [599 N.W.2d 440,] this form of aggravation is insufficient. Claimant suffered a significant fracture-dislocation and developed the inevitable posttraumatic arthritis that would be expected from such an injury. As a result of the arthritic condition, claimant required arthroscopy, arthrodesis, and more conservative treatment of the right ankle. These procedures represent sequelae of the original October 28, 2008 injury, not distinct cumulative injuries. Claimant also developed bilateral knee and back complains as a result of an altered gait follow arthrodesis; these complaints also reflect sequelae of the original October 28, 2008 injury and are not distinct cumulative injuries.

Accordingly, the deputy commissioner declined to award benefits for the asserted cumulative injury with injury dates of March 6, 2012, May 16, 2013, or January 15, 2014.

Gumm brought an interagency appeal, and on October 12, 2017, the commissioner filed an appeal decision adopting the deputy's findings of fact. The commissioner also affirmed the deputy's determination that Gumm had failed to establish a distinct and discrete cumulative injury.

Gumm timely sought judicial review. After receiving briefs and hearing argument, the district court entered an order on May 16, 2018, that upheld the commissioner's ruling and dismissed Gumm's petition.

Gumm appealed, and we transferred the case to the court of appeals. On May 15, 2019, a divided panel of our court of appeals reversed the district court and remanded for further proceedings. The court of appeals majority reasoned that *Floyd v. Quaker Oats*, 646 N.W.2d 105 (Iowa 2002),

> creates a carefully circumscribed exception to the *Ellingson* holding. In other words, if a claimant is precluded by the statute of limitations from bringing an original proceeding or review-reopening, the claimant may recover by way of a cumulative-injury claim for any increase in functional disability shown to have occurred as the result of day-to-day activities in the workplace subsequent to the original injury without having to show he or she suffered a 'distinct and discr[ete]' disability attributable to the post-original-trauma work activities.

One member of the panel dissented.

We granted Easter Seals' application for further review.

## II. Standard of Review.

Generally, we review the workers compensation commissioner's legal interpretations of Iowa Code chapter 85 for errors at law rather than giving deference to those interpretations. *Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 84 (Iowa 2018); *see also JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 892–93 (Iowa 2016). To the extent this case centers on the meaning of the term "injury," we recently interpreted a use of that term in chapter 85 under an errors-at-law standard. *Ochoa*, 888 N.W.2d at 892–93, 896–97. "[W]e accept the commissioner's factual findings when supported by substantial evidence." *Bluml*, 920 N.W.2d at 84.

## III. Analysis.

Gumm received permanent partial disability benefits for her October 28, 2008 ankle injury. The last monthly benefit payment occurred

on May 21, 2010. Unfortunately, her ankle condition worsened as she continued work at Easter Seals. And she did not make a claim about the worsening condition until February 24, 2014.

The normal way for a claimant to obtain additional disability benefits when her physical condition deteriorates over time and the deterioration is attributable to an earlier compensable injury is through a review-reopening claim under Iowa Code section 86.14(2). "The workers' compensation statutory scheme contemplates that future developments (post-award and post-settlement developments), including the worsening of a physical condition or a reduction in earning capacity, should be addressed in review-reopening proceedings." *Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 392 (Iowa 2009). As we said in *Kohlhaas*,

> A compensable review-reopening claim filed by an employee requires proof by a preponderance of the evidence that the claimant's current condition is "proximately caused by the original injury." While worsening of the claimant's physical condition is one way to satisfy the review-reopening requirement, it is not the only way for a claimant to demonstrate his or her current condition warrants an increase of compensation under section 86.14(2).

*Id.* (quoting *Simonson v. Snap-On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1999)).

However, a review-reopening claim is subject to a three-year statute of limitations from the date of the last benefit payment. *See* Iowa Code § 85.26(2).

> An award for payments or an agreement for settlement provided by section 86.13 for benefits under this chapter or chapter 85A or 85B, where the amount has not been commuted, may be reviewed upon commencement of reopening proceedings by the employer or the employee within three years from the date of the last payment of weekly benefits made under the award or agreement.

*Id.* "The plain language of the statute requires the three-year period to commence from 'the date of the last payment of weekly benefits made under the award or agreement.' " *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 90 (Iowa 2013) (quoting Iowa Code § 86.26(2)); *see also Whitmer v. Int'l Paper Co.*, 314 N.W.2d 411, 412 (Iowa 1982).[2]

Sometimes, though, disagreements can arise as to whether the claimant has suffered an aggravation of her previous compensable injury or a distinct and discrete cumulative injury. That was the crux of our decision in *Ellingson.* *See* 599 N.W.2d 440.

In *Ellingson,* a forty-pound box fell on the claimant's head on January 4, 1985. *Id.* at 442. This resulted in chronic neck, head, and arm pain for the claimant. *Id.* At her doctor's orders, the claimant missed substantial work time in early 1985 due to neck, head, and arm pain. *Id.* She was again taken off work for approximately two months in 1987 due to continuing neck and arm pain. *Id.* When she returned, she had to work partial days for about four months. *Id.* In 1989, she was again taken off work by doctor's directions for approximately six months. *Id.*

In 1990, the claimant underwent an anterior cervical discectomy and fusion and was off work for about six months. *Id.* Late in 1991, she was moved to office work after her work activities were restricted based on continuing neck and arm pain. She was again taken off work for periods of time in early 1992. *Id.* at 442–43. In December 1992, the claimant underwent another anterior cervical discectomy and fusion. *Id.* at 443.

Before the commission, the claimant alleged two separate compensable injuries: "(1) the injury incurred from the falling box on

---

[2]Of course, the claimant can still receive reimbursement for needed medical treatment that occurs after the three-year time period has passed. *See* Iowa Code § 85.26(2); *Ayers v. D & N Fence Co.*, 731 N.W.2d 11, 18 (Iowa 2007). All of Gumm's medical bills were paid by Easter Seals in this case.

January 4, 1985, and (2) a distinct and discreet cumulative neck injury from which an episode of disability was manifested on June 17, 1992." *Id.* We took note of the claimant's reason for claiming two injuries: "Speaking with commendable candor, Ellingson freely admits that her cumulative-injury claim is designed to produce a new date of injury that will provide a higher wage base for computing her compensation." *Id.* at 444. However, the commissioner "found that the only compensable injury established by the evidence was the January 4, 1985 injury." *Id.* at 443.

We upheld the commissioner's factual finding that the claimant did not have a viable claim for a separate cumulative injury. *Id.* at 444. We explained,

> It is clear, however, that she may not establish a cumulative-injury claim by merely asserting that her disability immediately following the January 4, 1985 injury was increased by subsequent aggravating work activities. That circumstance only serves to increase the disability attributable to the January 4, 1985 injury. To show a cumulative injury she must demonstrate that she has suffered a distinct and discr[ete] disability attributable to post–1985 work activities rather than as an aggravation of the January 4, 1985 injury. In presenting that claim to the commissioner, she could only prevail if the commissioner, as primary fact finder, found that a factual basis for a cumulative-injury disability existed. The commissioner did not make that finding.

*Id.* In short, whether a claimant has suffered an aggravation of a previous traumatic injury or a distinct and discrete cumulative injury is a fact issue to be determined by the commissioner, and that fact determination has the "effect of a jury verdict." *Id.*

*Ellingson* is not alone in recognizing the requirement that injuries must be distinct and discrete to be separately compensable. As we said in *Excel Corp. v. Smithart*, 654 N.W.2d 891 (Iowa 2002), *superseded by*

*statute on other grounds*, 2004 Iowa Acts 1st Extraordinary Session ch. 1001, § 12,

> The separate and discrete requirement prevents a worker from transforming a chronic condition into multiple injuries, and obtaining the multiple separate recoveries feared by Excel. Thus, employers are protected against paying for the prior disability over and over by the separate and discrete requirement.

*Id.* at 898.

Three years after *Ellingson*, we decided *Floyd.* *See* 646 N.W.2d 105. There the claimant sustained an initial acute injury when he twisted his knee on September 3, 1993. *Id.* at 106. An orthopedic surgeon concluded that the claimant had suffered a meniscus tear that would heal, but by May 1994, the claimant was continuing to experience pain and "had a greater compromise of the joint space than had previously identified." *Id.* Toward the end of that year, the surgeon established a lifting restriction of forty to sixty pounds. *Id.* The surgeon opined the following year that arthroscopy would not work, but the situation was not bad enough to warrant a knee replacement. *Id.* at 106–07. The knee "is not a good knee, but it may last this way yet for several years." *Id.* at 107. He fixed July 23, 1996, as the date of maximum medical improvement from the September 3, 1993 injury." *Id.*

As in *Ellingson*, the claimant filed two separate petitions, claiming both a September 3, 1993 injury and a subsequent cumulative injury. *Id.* The claimant then dismissed the petition involving the September 3 injury in the face of a statute of limitations defense. *Id.* The commissioner nonetheless found a compensable impairment for the cumulative injury. *Id.*

On appeal, the employer relied on *Ellingson* to argue that the claimant had not "suffered a distinct and discr[ete] disability solely

attributable to work activities over time, as opposed to an aggravation of a preexisting injury from an identified traumatic event." *Id.* at 108. We distinguished *Ellingson* on the following basis:

> In the present case, claimant's arbitration petition seeking benefits for the September 3, 1993 injury was voluntarily dismissed in the face of a statute-of-limitations defense by the employer. The industrial commissioner concluded that the dismissal of that petition precluded any consideration of the September 3, 1993 injury as a compensable event. Given this circumstance, we believe that claimant should be permitted to recover by way of a cumulative-injury claim for any increase in functional disability shown to have occurred as the result of day-to-day activities in the workplace subsequent to the September 3, 1993 injury.

*Id.*

In other words, the fact that the original trauma was "precluded . . . as a compensable event" meant that the claimant could recover "by way of a cumulative-injury claim" for any additional disability resulting from continued workplace activity since the date of the original trauma. *See id.* Seemingly, we recognized the following exception to *Ellingson*: where the claimant was *precluded* from recovering payments for the original trauma, the claimant would be permitted to recover payments on a cumulative-injury basis for subsequent aggravation of the trauma. This is consistent with the notion that "[w]e apply the workers' compensation statute broadly and liberally in keeping with its humanitarian objective: the benefit of the worker and the worker's dependents." *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 257 (Iowa 2010).

Ordinarily, of course, the way to recover benefits for any increase in functional disability resulting from aggravation of an original traumatic injury due to day-to-day activities in the workplace is by a review-reopening claim. *See Kohlhaas*, 777 N.W.2d at 392. But where the

claimant never received benefit payments in the first place, there was never a claim that could have been reopened. It seems fairer to allow the claimant to bring a cumulative-injury claim for the increase. Doing so doesn't undermine the "distinct and discrete" injury principle because the claimant isn't trying to turn one injury into two. *See Smithart*, 654 N.W.2d at 898.

We thus read *Floyd* as recognizing that a claimant who is suffering the mounting, cumulative effects of a workplace trauma does not have to prove a distinct and discrete injury when the claimant never received an award for that trauma. In that case, the employee is not claim-splitting or circumventing the statute of limitations for reopening. But we think *Ellingson* remains good law otherwise.

Admittedly, there is language in *Floyd* that can be read more broadly. *Floyd* discussed with approval *Ziegler v. United States Gypsum Co. See Floyd*, 646 N.W.2d at 108–09 (discussing *Ziegler*, 252 Iowa 613, 106 N.W.2d 591 (1960)). In *Floyd* we said of *Ziegler*, "The *Ziegler* decision stands for the proposition that, when a permanent disability has been established by an adjudicated award, a later aggravation may provide an independent compensable event but only to the extent of the increased disability that flows therefrom." *Id.* at 109.

But, at the same time, we never suggested in *Floyd* we were overruling *Ellingson*. Again, in *Ellingson* we said, "To show a cumulative injury [the claimant] must demonstrate that she has suffered a distinct and discr[ete] disability attributable to post-[traumatic injury] work activities rather than as an aggravation of the [traumatic] injury." 599 N.W.2d at 444.

*Ziegler*, moreover, was a special case along the lines of *Floyd*. In *Ziegler* the claimant suffered a serious back injury on May 16, 1957. 252

Iowa at 617, 106 N.W.2d at 593. A year later, he was still in treatment and still in pain. *Id.* at 617–18, 106 N.W.2d at 593. Nevertheless, he returned to work on May 21, 1957, and began loading fifty-pound loads. *Id.* at 618, 106 N.W.2d at 594. On May 27, he felt "a terrific pain down [his] spine, down [his] legs." *Id.* The claimant at that point was diagnosed for the first time with a bulged disc in addition to the previously diagnosed conditions. *Id.*

Under these circumstances, the claimant could have filed a review-reopening claim. We acknowledged as much in our opinion. *Id.* at 619, 106 N.W.2d at 594 ("Under the usual case of this kind a simple application to revalue the disability resulting from the first injury might be made . . . ."). Yet we also noted that the claimant "did not elect this remedy for a very obvious reason, i.e., to escape subrogation rights of defendant [i.e., the employer], established by recovery in a tort action." *Id.* The claimant had procured a substantial settlement against a third-party tortfeasor. *Id.* Because anything the claimant recovered in a review-reopening would effectively be lost to the claimant through subrogation we concluded, "Thus this case must be considered as though defendant was, in fact, a new and different employer of the injured claimant, and the injury a new injury." *Id.* at 620, 106 N.W.2d at 595. Therefore, we applied the fiction that the claimant had actually been starting with a new employer on May 21. *Id.* ("It is, of course, well settled that when an employee is hired, the employer takes him subject to any active or dormant health impairments incurred prior to this employment."). It is also important to note that there was a new traumatic event in *Ziegler*, the "terrific pain down [his] spine" triggered perhaps by the fact that he was loading fifty pounds per trip the week he returned from very significant back surgery. *Id.* at 618, 106 N.W.2d at 594.

We therefore believe that the distinction drawn in *Ellingson* and *Smithart* between cumulative aggravation of an existing compensable injury through the daily grind of working and a new, discrete injury remains valid in Iowa. In the former case, review-reopening is the recognized remedy if the claimant desires additional disability benefits. A claimant cannot avoid legislatively imposed restrictions by reclassifying an injury as a new injury unless the facts support that classification. If the claimant fails to prove that she could have otherwise avoided her cumulative ankle complications and related difficulties as time went on, this is not a new compensable injury. *See Ayers v. D & N Fence Co.*, 731 N.W.2d 11, 16–17 (Iowa 2007).

Other jurisdictions agree with this rule. In *Scott v. Shaw Indus., Inc.*, 729 S.E.2d 327, 328–29 (Ga. 2012), the Georgia Supreme Court held that an employee could not bring a claim for "a fictional new injury, as opposed to a change in condition," to avoid the statute of limitations. Quoting an earlier case, the court discussed the following scenario:

> [T]he claimant sustains an injury and is awarded compensation during his period of disability. Subsequent thereto he returns to his employment performing his normal duties or ordinary work. Then as a result of the wear and tear of ordinary life and the activity connected with performing his normal duties and not because of a specific job-related incident his condition gradually worsens to the point that he can no longer continue to perform his ordinary work. This gradual worsening or deterioration would constitute a change in his condition and not a new accident.

*Id.* at 329 (quoting *Cent. State Hosp. v. James*, 248 S.E.2d 678, 679 (Ga. Ct. App. 1978)). Colorado has held that where an employee files a new injury claim *within* the statute of limitations for reopening an earlier claim, the statute of limitations on the reopening claim is tolled if it is later determined that the employee's "current condition is the natural result of the [earlier] injury, he has not suffered a new injury and benefits may be

obtained only by way of a petition to reopen." *Valdez v. United Parcel Serv.*, 728 P.2d 340, 342 (Colo. App. 1986).  But here Gumm did not file a claim for a new injury within the review-reopening deadline.  In *Collins v. Norfolk Shipbuilding & Drycock Corp.*, 522 F. Supp. 1211 (E.D. Va. 1981), the court observed,

> In those compensation cases where there is no causal relationship between a first compensable injury and a subsequent condition, the employee's proper remedy is an original petition or claim based on the new injury.  Where, however, the subsequent condition represents the progression, deterioration or aggravation of an original compensable injury, the employee's proper relief is a petition to reopen or modify the original compensation order.  Accordingly, the limitations period for the aggravation or exacerbation of a compensated injury relates back to the date of the original injury and not to the date of the aggravation or exacerbation.

*Id.* at 1214 (citations omitted); *see also* 13 Arthur Larson et al., *Larson's Workers' Compensation Law* § 131.03[1][b], at 131-21 to -22 (2019) ("[W]hen complications develop directly from the original injury, . . . the reopening statute applies, and the limitation period cannot be escaped by calling the condition a new disability." (Footnotes omitted.)).

We also note that the commissioner has regularly adopted the same reading of *Ellingson* and *Smithart* that we are reaffirming today.  Specifically, the commissioner has indicated that those decisions stand for the following propositions:

> The standard that must be met to establish two separate work-related injuries requires a claimant to demonstrate a distinct and discrete "disability attributable to . . . work activities" that occurs after an initial injury.  It is not enough for the worker to show disability has been increased by subsequent work activities.  These circumstances may serve to increase the disability attributable to the first injury, but do not establish a separate and discrete disability.  To establish a separate injury claim, the subsequent condition of the claimant must not be a consequence of the first injury.

*Boken v. Peak Interests, LLC*, Iowa Workers' Comp. Comm'n Nos. 5040834 & 5056052, 2019 WL 1984043, at *12 (Apr. 29, 2019) (quoting *Ellingson*, 599 N.W.2d at 444). *See also generally Dautovic v. Concord Hosp.*, Iowa Workers' Comp. Comm'n Nos. 5028332 & 5051676, 2016 WL 2944583 (May 17, 2016); *Fred Smith v. Midwest Mfg. Co.*, Iowa Workers' Comp. Comm'n No. 5025093, 2009 WL 1171294 (Apr. 29, 2009); *Grove v. Interstate Brands Corp.*, Iowa Workers' Comp. Comm'n No. 5007230, 2004 WL 1713773 (July 19, 2004). Although we have no obligation to follow the commissioner's reading of our own cases, this convergence gives us reason to believe we are not misreading our own caselaw.

For the foregoing reasons, we hold the commissioner and the district court correctly ruled that where a claimant has received disability benefits for a prior compensable injury, the claimant is limited to the review-reopening remedy for additional disability benefits unless she can prove she has suffered another injury. If the subsequent injury is a cumulative injury, it must be a distinct and discrete injury, not merely the aggravation of the prior injury due to regular work activities.

We now turn to whether there is substantial evidence to support the commissioner's finding that Gumm did not suffer a distinct and discrete injury, but only an aggravation of the earlier October 28, 2008 traumatic injury. This court is "bound by the commissioner's findings of fact so long as those findings are supported by substantial evidence." *IBP, Inc. v. Burress*, 779 N.W.2d 210, 213 (Iowa 2010). Evidence is substantial if "the quantity and quality of evidence . . . would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(*f*)(1).

Here, substantial evidence supports the commissioner's factual findings. Gumm sustained a significant right ankle fracture and dislocation on October 28, 2008, when she slipped and fell on wet grass. No new event occurred on the subsequent injury dates she alleged—March 6, 2012, May 16, 2013, and January 15, 2014. The first two dates were simply dates of consultations with Dr. Barp; the third date was the last day she performed her work duties for Easter Seals.

Dr. Barp testified that Gumm's pain on March 6, 2012, was an expected consequence of her 2008 injury and the subsequent surgery. Additionally, Dr. Barp testified that through May 16, 2013, Gumm's treatment was for the injury and condition she sustained on the initial 2008 fall. Gumm's development of arthritis was a natural consequence of the earlier injury. Dr. Barp agreed that

> the substantial and precipitating cause of Ms. Gumm's ongoing ankle pain complaints was her 2008 slip and fall injury. Subsequent surgeries were necessary due to the development of arthritis and were necessary in order to diminish ongoing symptoms caused by the natural progression of the underlying degenerative arthritis.

Dr. Barp opined that Gumm was going to develop arthritis regardless of whether she returned to work; at most, being on her feet at work hastened its development.

There was thus sufficient evidence to sustain the commissioner's finding that Gumm did not suffer a distinct and discrete cumulative injury but merely the aggravation over time of her original 2008 injury. Considerable record evidence supports the commissioner's view that Gumm's post-2008 difficulties were entirely sequelae to her original injury.

**IV. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and affirm the judgment of the district court denying Gumm's petition for judicial review.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except McDermott, J., who takes no part.