Janice Irene HILL, Appellant,

v.

FLEETGUARD, INC. and Travelers
Insurance Co., Appellees.

No. 04–0621.

Supreme Court of Iowa.

Oct. 28, 2005.

Rehearing Denied Nov. 30, 2005.

Mark S. Soldat of Max Schott & Associates, P.C., Des Moines, for appellant.

Richard G. Book of Huber, Book, Cortese, Happe & Lanz, P.L.C., Des Moines, for appellees.

STREIT, Justice.

Janice Hill appeals from a district court's judgment affirming the denial of permanent partial disability workers' compensation benefits by the industrial commissioner. Hill claims the district court erred by ignoring the deputy's determinations of witness veracity. We do not reach this issue because we find it was not properly preserved for appellate review. Hill also claims the commissioner injected unsupported material facts into his decision. We find Hill's substantial rights were not prejudiced by these alleged errors. Hill also challenges the commissioner's conclusion that Hill suffered no permanent disability. We find there was substantial evidence to support the commissioner's decision and affirm the district court.

## I. Facts and Prior Proceedings

Hill had been out of the workforce for twenty years before she began her employment with Fleetguard, Inc. During this time she was treated for numerous medical conditions. Hill consulted various doctors complaining of pain in her chest, abdomen, back, neck, shoulder, as well as numbness and tingling in her right thumb. Between 1982 and 1998 she was diagnosed with cervical strain, lumbosacral strain, degenerative cervical osteophytes (bone spurs), and costochondritis (inflammation of the rib joints, and attachments of intercostal muscles to the ribs). She was also diagnosed with mitral valve prolapse, a heart condition which she treated with medication as needed. Doctors prescribed treatment ranging from ibuprofen and heating pads to more advanced treatments such as pain medication, anti-inflammatory

medication, physical therapy, and cervical traction. Hill had approximately twenty different visits to various doctors, including two trips to the Mayo Clinic, relating to pain in her neck, back, and chest.

In November of 1998, Hill, at the age of forty-nine, reentered the workforce as an assembler on the production line at Fleetguard. Hill rotated amongst different positions on the line assembling, inspecting, and packaging filters. She soon found the filters she was required to handle on one part of the line were too heavy, and caused her chest pains.[1] In January of 1999, she went to her primary care physician, Dr. Susan Sieh, for this latest episode of chest pain. Dr. Sieh recommended she change to a less weight-intensive part of the assembly line. Her supervisor followed this request and moved her to a welding machine off the assembly line.

Hill eventually moved back to the assembly line placing center tubes in filters. After only three weeks she returned to her doctor complaining of chest pain. Her doctor took her off work and recommended she refrain from activities that exacerbated the pain.

Hill returned to the Mayo Clinic for cardiac evaluation in October of 1999 and was diagnosed with musculoskeletal chest wall pain and a minimal mitral valve prolapse. In January of 2000, she was assigned to work on center tubes again. Two weeks later she returned to the doctor because of "musculoskeletal chest pain due to her work." Her doctor told her to never work on center tubes again. Hill returned to work at various positions, ranging from the assembly line to the welding machine. Hill began to develop right hip, leg, and back pain, from the repetitive motion of pressing the welding

machine foot pedal ten times per minute, or approximately 4800 times per shift.

Hill returned to the doctor complaining of discomfort in her right leg. Her doctor diagnosed sciatic neuritis (burning pain or numbness and tingling that runs down the back side of the leg) and prescribed new medication along with physical therapy. The doctor also restricted her from working at the welding machine for three weeks.

Hill filed three separate petitions with the workers' compensation commission alleging injuries to her upper body, including her upper extremities, neck and chest, right elbow, and right hip. Fleetguard and its insurance carrier, Travelers Insurance Company, denied the injuries alleged in all three petitions. These petitions were consolidated into two claims.

These two claims came for hearing before a deputy workers' compensation commissioner in July of 2002. At the hearing, Hill described her continuing health problems and explained how she could no longer hike or go on long walks. She also indicated she was currently on voluntary layoff from Fleetguard. Three doctors gave medical opinions concerning Hill's condition.

Dr. Donna Bahls, a physician obtained by Fleetguard, opined Hill's neck, shoulder, and back pain were due to temporary aggravations of a preexisting degenerative spine problem. Dr. Bahls determined the work activities temporarily aggravated Hill's costochondritis, but found they caused no structural change or permanent physical impairment. Dr. Bahls assigned no impairment ratings for any of the injuries.

Dr. Justin Ban, Hill's evaluating physician, concluded her "work activities

---

1. The majority of the filters on the line weighed between half a pound and four pounds. Hill stated any filter weighing "over half a pound wound up getting me in a lot of trouble."

caused, contributed or materially and permanently aggravated her costochondritis, medical epicondylitis, tendonitis, and cumulative trauma disorder," but also concluded her conditions were unratable under the AMA guidelines.

Dr. Susan Sieh, her primary care physician, discussed how Hill's preexisting costochondritis would "flare" during some work activities and concluded, "[t]he more she does and the heavier she works, the more pain she will have." She determined the costochondritis would not result in permanent impairment, but her "right hip [pain] may or may not be permanent." Dr. Sieh, like the other doctors, declined to assign any permanent impairment ratings.

The deputy concluded, under the first claim, Hill sustained a ten percent permanent industrial disability to her body as a whole as a result of the injury to her chest. Under the second claim, the deputy determined Hill suffered a twenty percent permanent industrial disability to her body as a whole as a result of the injury to her hip, and a five percent industrial disability to her right arm as a result of the injury to her elbow. The deputy also awarded healing period benefits, payment for her medical expenses, and penalty benefits for nonpayment of permanent partial disability compensation.

Fleetguard appealed to the industrial commissioner. The commissioner generally adopted the findings and conclusions of the deputy commissioner with one major exception. He determined Hill "failed to prove ... the injuries caused any permanent disability of any type" and denied Hill any award for permanent partial disability benefits because her work-related injuries were "merely temporary."

Hill sought judicial review through the district court. The district court affirmed the commissioner's decision noting substantial evidence supported the ruling in light of Hill's past history of medical problems and the lack of permanent impairment ratings. Hill appealed.

## II. Issues

Hill argues three issues: (1) the court should have treated the deputy's determinations of witness veracity "as a piece of evidence" to be placed on the scales weighing the supporting and detracting evidence for substantiality, (2) the commissioner's decision should be reversed because he injected material facts in the final decision without any basis for such facts in the evidentiary record, and (3) the commissioner incorrectly decided Hill was not entitled to permanent partial disability compensation benefits.

## III. Scope of Review

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs judicial review of the commissioner's decisions. Iowa Code § 86.26 (2001). In exercising its judicial review power, the district court acts in an appellate capacity. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004). When reviewing the district court's decision, we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. *Id.* at 464. If the conclusions are the same, we affirm; otherwise we reverse. *Id.*

Hill's arguments on appeal deal with whether the commissioner made an error of law, whether there was substantial evidence to support the commissioner's findings, and whether the commissioner correctly applied the law to the facts. The following provisions of section 17A.19(10) are relevant:

> The court shall reverse, modify, or grant other appropriate relief from agency action ... if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is any of the following:

. . . .

c. Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.

. . . .

f. Based upon a determination of fact . . . that is not supported by substantial evidence in the record before the court when that record is viewed as a whole.

. . . .

m. Based upon an irrational, illogical, or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency.

Iowa Code § 17A.19(10)(c), (f), (m). The commissioner has not been vested with the final authority to interpret the law by which permanent partial disability compensation benefits are awarded, so we will not defer to the agency's interpretation of such law and we are free to substitute our judgment de novo for the commissioner's interpretation. *See Clark v. Vicorp Rests., Inc.*, 696 N.W.2d 596, 604 (Iowa 2005); Iowa Code § 17A.19(10)(c), (11)(b).

■ The factual findings regarding the award of benefits are within the commissioner's discretion, so long as the facts are supported by substantial evidence. *Clark*, 696 N.W.2d at 604; Iowa Code § 17A.19(10)(f). "Because factual determinations are within the discretion of the commissioner, so is the commissioner's application of law to the facts." *Clark*, 696 N.W.2d at 604. We may reverse the commissioner's application of the law to the facts if we determine such an application was "irrational, illogical, or wholly unjustifiable." *Id.*; Iowa Code § 17A.19(10)(m).

### IV. Witness Veracity

■ Hill argues the district court should have treated the deputy's determinations of witness veracity "as a piece of evidence" to be placed on the scales weighing the supporting and detracting evidence for substantiality. In essence, Hill asks us to decide how a reviewing court should treat determinations of veracity by the deputy who personally observed the demeanor of the witness when the reviewing court is "judging" the commissioner's decision under the substantial evidence rule.

Before we review this issue we must first consider whether Hill properly preserved this issue for appellate review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut III*, 641 N.W.2d 532, 537 (Iowa 2002). "It is not a sensible exercise of appellate review to analyze facts of an issue 'without the benefit of a full record or lower court determination[ ].' " *Id.* (quoting *Yee v. City of Escondido*, 503 U.S. 519, 538, 112 S.Ct. 1522, 1534, 118 L.Ed.2d 153, 172 (1992)).

Hill brought this issue before the district court on the day of the hearing in a supplement to her judicial review brief. This supplemental brief contained no supporting argument, and simply quoted a three-page passage from a book on the Iowa Administrative Procedure Act. *See generally* Arthur Earl Bonfield, *Amendments to Iowa Administrative Procedure Act (1998), Chapter 17A, Code of Iowa (House File 667 as adopted): Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 65–68 (1998) [hereinafter Bonfield]. The district court's ruling did not mention this passage or discuss how the judge or commissioner was to weigh the deputy's determinations of witness veracity.

■■ When a district court fails to rule on an issue properly raised by a party, the

party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal. *Meier*, 641 N.W.2d at 539. We have repeatedly said a rule 1.904(2) motion[2] is the proper method "to preserve error 'when the district court fails to resolve an issue, claim or other legal theory properly submitted for adjudication.'" *Id.* (quoting *Explore Info. Servs. v. Iowa Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001)). "Even if a rule [1.904(2)] motion is not available to a party ... that party must still request a ruling from the district court to preserve error for appeal on an issue presented but not decided." *Id.* We recognize there "is no procedural rule solely dedicated to the preservation of error doctrine" so "a party may use any means to request the court to make a ruling on an issue." *Id.* Without a ruling by the trial court for us to review, and with Hill not requesting a ruling, we will not consider this issue on appeal.

## V. Unsupported Factual Findings

▮▮▮ Hill next argues a reversal of the commissioner's decision is necessary because he utilized facts not present in the record. We consider this issue under the confines of section 17A.19(10):

> The court shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief, if it determines that *substantial rights* of the person seeking judicial relief *have been prejudiced* because the agency action is ... [b]ased upon a determination of fact ... that is not supported by substantial evidence in the record before the court when that record is viewed as a whole.

Iowa Code § 17A.19(10)(*f*) (emphasis added). We have found this "substantial

rights" language analogous to a harmless error rule. *City of Des Moines v. Pub. Employment Relations Bd.*, 275 N.W.2d 753, 759 (Iowa 1979); *see* Bonfield, at 61 (labeling section 17A.19(10) "simply a rule of harmless error"). We recognize the commissioner's action "should not be tampered with unless the complaining party has in fact been harmed." *Pub. Employment Relations Bd.*, 275 N.W.2d at 759. This form of analysis is appropriate because it would be inefficient for us to provide relief from invalid agency action when the particular invalidity has not prejudiced the substantial rights of the petitioner. Bonfield, at 61. Therefore, Hill bears the burden of demonstrating both the invalidity of the agency's action and resulting prejudice. Iowa Code § 17A.19(8)(*a*); *see Titan Tire Corp. v. Employment Appeal Bd.*, 641 N.W.2d 752, 758 (Iowa 2002) ("it [would be] unnecessary to determine whether the ALJ erred or abused its discretion in admitting this evidence because [petitioner] has not shown that any error prejudiced its substantial rights"). We will analyze whether each disputed statement was supported by facts in the record and then analyze whether the inclusion resulted in prejudice to Hill.

### a. "Notorious"

▮▮▮ Hill contends the commissioner's following statement was not supported by substantial evidence in the record: "Degenerative disc disease is notorious for being easily and recurrently aggravated by activity." No evidence in the record provides any basis for such a statement. Because this statement was not supported by substantial evidence in the record, it was improper for the commissioner to include it in his decision. We now turn our analysis to whether this prejudiced Hill's substantial rights.

---

**2.** The 1.904(2) motion permits a party to file a motion to request the district court to amend or enlarge its findings and conclusions, and to enable the court to modify its judgment or enter a new judgment. Iowa R. Civ. P. 1.904(2).

The deputy found Hill established an injury to her right hip from her employment at Fleetguard. The deputy did not find there was temporary or permanent work-related injury to her back. He only "noted that [Hill's] right hip pain is part of her low back problems all of which are aggravated by her working; thus, it must be concluded that this is a whole body disability and must be compensated industrially." This latter statement reflects the deputy's reasons for labeling the hip injury an unscheduled injury, but does not indicate the degenerative disc disease was determinative in his finding of hip injury.

The commissioner's reference to degenerative disc disease was an anomaly in his appeal decision. This statement was made in the analysis of the injury to her hip, elbow, and chest—not to her back. A further reading of the decision indicates the commissioner, like the deputy, did not find there was a work-related injury to Hill's back. Therefore, any discussion as to the permanent side effects of degenerative disc disease is misplaced in the analysis of the injury to her hip, elbow, or chest. While it was improper to include such a statement in the decision, it was not prejudicial to Hill's substantial rights.

### b. "Strong Evidence"

Hill contends the following statement was also unsupported by substantial evidence in the record:

> The fact that claimant's symptoms appeared within a relatively short time frame following whenever she began to perform the injurious activities in the workplace is strong evidence that the

work merely manifested her inability to do the work rather than injured her in a way that caused her to become unable to do the work that she was previously capable of performing.

This statement is a finding supported by evidence in the record. The first half of the statement, "[t]he fact that claimant's symptoms appeared within a relatively short time frame following whenever she began to perform the injurious activities in the workplace" is supported by evidence in the record. The second half of the statement: "is strong evidence that the work merely manifested her inability to do the work rather than injured her in a way that caused her to become unable to do the work that she was previously capable of performing" is a finding or conclusion based upon the previously mentioned evidence in the record. This form of analysis is appropriate. *See* Iowa Code § 17A.16(1) ("Findings of fact ... shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. The decision shall include an explanation of why the relevant evidence in the record supports each material finding of fact."). Hill's disagreement with whether this is "strong evidence" does not make the commissioner's finding improper.

### c. "Characteristically Improve"

Hill also contends the following statement is not supported by evidence in the record: "The symptoms from an overuse cumulative injury characteristically improve when the injurious activity ceases." We conclude this statement is not supported by substantial evidence in the record.[3]

---

**3.** The commissioner might have meant that *Hill's* symptoms from overuse cumulative injury improved once the injurious activity ceased. This conclusion would be supported by statements from Hill's examining physician, Dr. Ban, who stated "[her] work history

indicates that her cumulative trauma disorder ... is aggravated by her work activities. In the past modification of her work activities has resulted in improvement in her signs and symptoms." However, the commissioner did

We now analyze whether the commissioner's use of this statement was actually prejudicial to Hill's substantial rights. A review of the context of this statement shows this statement was used alongside other factual findings that were supported by substantial evidence in the record. None of the treating or examining physicians assigned a rating of permanent impairment. Neither Dr. Bahls nor Dr. Sieh identified any permanent physiological change in Hill's body caused by work-related injuries. In addition, one treating physician opined "it is clearly obvious to me that stress is playing a significant role in exacerbating her symptoms." This one improper inference was merely a cumulative finding used to support the commissioner's decision. If the finding was excised from the commissioner's decision, there are still numerous factual findings to support his conclusion. The use of one unsupported finding was not prejudicial to Hill's substantial rights.

Having found none of these statements were prejudicial to Hill's substantial rights, we next consider whether the commissioner incorrectly decided Hill was not entitled to permanent partial disability compensation benefits.

## VI. Permanent Disability

Hill challenges the commissioner's conclusion that Hill suffered no permanent partial disability. Hill contends this decision was not based on substantial evidence and was illogical.

 We determine permanent partial disability by determining the employee's industrial disability. Industrial disability is based upon a loss in earning capacity, which "rests on a comparison of what the injured worker could earn before the injury as compared to what the same person could earn after the injury." *Second Injury Fund v. Nelson,* 544 N.W.2d 258, 266 (Iowa 1995); *see Sherman v. Pella Corp.,* 576 N.W.2d 312, 320–21 (Iowa 1998). We determine loss of earning capacity by considering the employee's functional impairment, age, education, work experience, qualifications, ability to engage in similar employment, and adaptability to retraining to the extent any of these factors affect the employee's prospects for relocation in the job market. *Sherman,* 576 N.W.2d at 321.

 The commissioner's analysis of whether Hill suffered permanent disability focused primarily on whether Hill suffered any functional impairment to her chest, hip, or elbow. However, functional impairment is only one of the factors we consider when determining industrial disability. *See Haynes v. Second Injury Fund,* 547 N.W.2d 11, 14 (Iowa Ct.App.1996) (stating "an impairment rating by a physician is not always necessary to establish a permanent disability."). This one factor is not solely determinative. *Id.* We will therefore analyze whether substantial evidence supports the commissioner's conclusion there was no permanent injury/functional impairment to Hill's chest, hip, or elbow, and then analyze all the factors to determine whether substantial evidence supports the commissioner's conclusion that Hill suffered no permanent disability of any type.

### a. Chest Injury/Functional Impairment

 Hill battled chest pain for years, and these chest pains resurfaced almost immediately once she began working at Fleetguard. Less than two weeks into her new job, she complained to Dr. Sieh, her treating physician, that she had chest

not direct his finding towards Hill's history; instead he made a sweeping generalization about "overuse cumulative injury" symptoms.

Such a broad statement is not supported by substantial evidence in the record.

pains. Before completing her second month of employment, she once again returned to Dr. Sieh complaining of chest pains.

Dr. Sieh indicated the work activities at certain stations on the assembly line caused Hill's preexisting costochondritis "to flare," but concluded "I do not feel her costochondritis will result in permanent impairment." Dr. Sieh imposed work restrictions, but she did not specify whether these restrictions were permanent. She also did not indicate whether these restrictions were necessary because of injuries from Hill's work activities at Fleetguard, or whether the restrictions were necessary to prevent further "flare" of preexisting conditions. The commissioner concluded these work restrictions were put in place to prevent future episodes of pain related to her preexisting conditions. Dr. Ban, Hill's examining physician, found no objective indications of permanent impairment—there was no swelling, deformity, loss of strength, loss of sensation, or loss of range of motion. Dr. Bahls, Fleetguard's examining physician, made a similar assessment, and concluded the work activities temporarily aggravated Hill's preexisting costochondritis, but caused no structural change or impairment.

After balancing this medical evidence against Hill's lay testimony, the commissioner found there was no permanent injury or functional impairment of Hill's chest.

 When reviewing the findings of the commissioner, we do not determine whether the evidence might support a different finding; instead we determine whether it supports the finding made. *Ellingson v. Fleetguard, Inc.*, 599 N.W.2d 440, 445 (Iowa 1999); *see also Sherman*, 576 N.W.2d at 321 (holding the commissioner determines the weight to be given to any expert testimony and may accept or reject this expert opinion in whole or in part). The medical evidence substantially supports the commissioner's finding of no permanent injury/no functional impairment to Hill's chest.

### b. Hip Injury/Functional Impairment

 The evidence relating to her hip condition was similarly inconsistent. Hill claims that even after she stopped working on the weight-intensive portions of the line and the welding machine, she could still not go on long walks or perform other similar activities. But medical evidence was inconclusive. Dr. Bahls found there was still normal hip motion and normal sensation in the leg and assigned no independent impairment rating for the back, leg, or hip. Dr. Sieh concluded she did not know whether the pain in Hill's right hip would result in permanent impairment. She too assigned no permanent impairment rating. Dr. Ban concluded Hill's "work activities caused, contributed or materially and permanently aggravated her . . . cumulative trauma disorder," but when describing Hill's functional status, he commented "[w]alking and sitting are not a problem." He also noted the cumulative trauma disorder was a nonratable impairment.

A reasonable person could weigh the lack of permanent impairment ratings and lack of objective measurements of injury against the lay testimony and Dr. Ban's ambiguous opinion to find there was no permanent injury/functional impairment to Hill's hip. *See* Iowa Code § 17A.19(10)(*f*)(1) (defining substantial evidence as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance"). There-

fore, we find there is substantial evidence supporting the commissioner's finding.

### c. Elbow Injury/Functional Impairment

 The evidence relating to Hill's elbow is very limited. Hill claims she has pain when squeezing a wash cloth and opening heavy doors, but as noted by the commissioner, the usefulness of such testimony is in doubt when it is unsupported by objective evidence. Dr. Sieh did not find permanent physical impairment of the elbow and assigned no impairment rating. Dr. Bahls performed various tests, but found no permanent impairment and assigned no impairment ratings for the elbow. Dr. Ban labeled the elbow pain a cumulative trauma disorder, but he too was unable to assign a permanent impairment rating. This is substantial evidence to support the commissioner's decision to find no permanent injury or functional impairment of the elbow.

### d. Analysis

Having found substantial evidence to support the commissioner's finding that Hill suffered no permanent injury to, or functional impairment of, her chest, hip, or elbow, we now turn to the remaining industrial disability factors to determine whether Hill suffered permanent disability.

 Hill contends the permanent work restrictions, coupled with her age, limited vocational experience, and education adversely impact her earning capacity and are proof of industrial disability. As noted above, it is unclear whether the permanent

work restrictions were put in place to protect Hill from re-injuring her preexisting condition, or put in place because of permanent physical injuries suffered while working at Fleetguard. The commissioner concluded they were put in place to prevent Hill from re-injuring her preexisting condition. There is substantial evidence to support this finding, and although we might be able to draw a different conclusion, we will not disturb this determination as it is supported by substantial evidence. *See Terwilliger v. Snap–On Tools Corp.*, 529 N.W.2d 267, 271 (Iowa 1995) ("The mere fact that we could draw inconsistent conclusions from the same evidence does not mean that substantial evidence does not support the commissioner's determinations."). Without proof of permanent restrictions caused by work-related injuries, the additional factors of age, limited vocational experience, and education lose their importance. Also, the fact Hill continued to work the same amount of hours, at the same rate of pay, weighs against any finding of reduced earning capacity.[4]

Hill's only remaining proof of industrial disability comes from her testimony that she could perform many activities before working at Fleetguard, but now, after working at Fleetguard, she is unable to perform many of the same activities. Although this may be a persuasive argument, when viewed in light of the medical evidence, lack of impairment ratings, and her past medical problems, we cannot say the commissioner's findings are not supported by substantial evidence.

---

4. Hill argues her new responsibilities at Fleetguard are "make work" and should be evaluated as a reduction in earning capacity. *See Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 18 (Iowa 1997) (stating an employer's special accommodation for an injured worker can be factored into an award determination to the limited extent the work in the newly created job discloses the worker has a discerned earning capacity). This argument fails because any special accommodation reflects Fleetguard's adherence to Dr. Sieh's work restrictions, which were not proven to be caused by any work-related injury.

### VII. Conclusion

We, like the district court, conclude there was substantial evidence to support the commissioner's denial of permanent partial disability benefits. We also find the commissioner's reference to unsupported factual findings in his decision was improper, but not prejudicial to Hill's substantial rights. We affirm the decision of the district court.

**AFFIRMED.**