# IN THE COURT OF APPEALS OF IOWA

No. 23-1562
Filed December 18, 2024

**CHARLES COLLINS,**
        Petitioner-Appellant,

**vs.**

**DES MOINES AREA REGIONAL TRANSIT AUTHORITY (DART) and WEST BEND MUTUAL INSURANCE,**
        Respondents-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Paul Scott, Judge.


        A former employee appeals the district court's denial of his petition for judicial review of the workers' compensation commissioner's ruling that he is not entitled to benefits because he failed to prove he contracted COVID-19 in the course of his employment.  **AFFIRMED.**


        Richard Schmidt of Mueller, Schmidt, Mulholland & Cooling, PLLC, Des Moines, for appellant.

        Charles A. Blades of Smith Mills Law P.C., Cedar Rapids, for appellees.


        Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

Charles Collins tested positive for COVID-19 in the fall of 2020 and believed he caught it at work. He was later terminated and sought workers' compensation benefits from his former employer based on his long-term COVID-19 symptoms. After an evidentiary hearing, which included dueling expert reports on causation, the workers' compensation commissioner denied benefits, concluding Collins did not prove he contracted COVID-19 in the course of his employment. Collins petitioned for judicial review, raising several grounds for reversal under Iowa Code section 17A.19(10) (2023). The district court understood Collins's judicial-review action to only challenge the commissioner's factfinding under section 17A.19(10)(f) and rejected the challenge, holding that substantial evidence supported the commissioner's finding. Collins now appeals.

Although Collins summarily invokes other grounds for reversal of the commissioner's decision under section 17A.19(10), the only ground properly before us is whether the commissioner's factual findings were supported by substantial evidence. And considering that ground, we agree that substantial evidence supports the commissioner's finding that Collins did not prove he was exposed to COVID-19 in his workplace. True, Collins took many precautions outside of work to avoid contracting COVID-19. But shortly before testing positive, he also traveled out of state to the Mayo Clinic—staying in a hotel for several days and encountering other people. Collins also could not show he had prolonged exposure to any COVID-positive employee while at work. Presented with competing theories of exposure and dueling expert reports, the commissioner's decision was supported by substantial evidence in the record. So we affirm.

I.

In 2020, Collins worked for the Des Moines Area Regional Transit Company ("DART"). Originally hired as a bus driver, Collins was rehabbing a knee injury and was temporarily assigned to light-duty work in DART's customer service department. His duties included counting fares, selling tickets, assisting customers, and performing other office tasks. When counting money, he worked in a small room with a few other employees. When assisting customers, he was stationed in a small outdoor booth, usually with one other employee.

Like many employers at this time, DART maintained safety protocols to mitigate the spread of the COVID-19 virus. DART mandated every employee wear a mask and keep six feet away from others. As part of its social-distancing efforts, it reduced the number of employees allowed in lounges and break rooms. DART ramped up its sanitizing procedures, cleaning high-traffic areas more often. It also implemented a screening process and checked employee temperatures when they reported to work. These measures were enforced by supervisors and management, who reported "good overall compliance."

DART also implemented contact tracing. If an employee tested positive, a manager contacted them and obtained a list of other employees who may have been exposed. If an employee was identified as someone who may have been exposed, that employee was notified and asked to test before returning to work. DART reimbursed testing costs for its employees. Employees who were symptomatic or exposed could stay home without losing pay. But transportation workers were federally classified as essential workers, so employees who may have been exposed but were not positive or symptomatic could continue working.

Because of his age and his partner's underlying medical condition, Collins took many precautions to avoid contracting COVID-19 in his private life. He had groceries delivered, utilized curbside pickup for dining out, consistently washed his hands, and avoided nearly all in-person encounters with others.

In early November, DART observed an uptick in positive cases among employees and asked all staff to test before 5:00 p.m. the next day. Collins tested positive for COVID-19. Collins reported the positive result to his supervisor, who performed a contact-tracing inquiry and instructed him to quarantine for ten days. He soon developed symptoms, which ultimately lasted for months and interfered with his daily life. In early 2021, Collins's COVID-induced shortness of breath and lingering knee injury caused him to fail a mandatory fitness test. As a result, DART terminated his employment in March.

Collins later sought workers' compensation benefits, asserting he contracted COVID-19 in the course of his employment with DART.[1]  *See* Iowa Code § 85.3(1) (2021) (authorizing benefits for "injuries sustained by an employee arising out of and in the course of the employment"). According to Collins, he must have been exposed to COVID-19 while at work because he took strict precautions outside of work, he worked in tight quarters with others in the customer-service booth and while counting money, and other DART employees often flouted safety protocols.

To support his claim, he offered an expert, Dr. Kuhnlein, who performed an independent medical examination of Collins. But that report was incomplete. In

---

[1] Collins sought benefits from DART and its insurer, West Bend Mutual Insurance. Because their interests align, we refer to them collectively as DART for readability.

the "causation," section, Dr. Kuhnlein states: "Please see my April 14, 2022, letter to Mr. Schmidt regarding causation." Yet Collins never admitted that letter during the agency proceedings. So the agency was left with only Dr. Kuhnlein's conclusory assertions that "it is more probable than not that [Collins] was exposed to Covid through his work at DART" because DART "had multiple cases about the same time that Mr. Collins turned positive."

DART opposed Collins's benefits and offered an expert of its own. In a lengthy opinion, DART's expert explained Collins "denied any known coworker contact with COVID symptoms, or a known person with a positive COVID test." Collins's positive test was a polymerase chain reaction ("PCR") analysis, "which can remain positive for weeks to months after COVID infection." And in those weeks and months leading up to Collins's positive test, Collins could have been exposed elsewhere. In particular, Collins experienced respiratory symptoms in September 2020 and sought medical care. Collins was then offered a COVID-19 test, which he declined. Collins also traveled with his partner out of state to the Mayo Clinic in mid-October 2020, where they stayed in a hotel for three or four days. While there, Collins interacted with hotel staff, food-delivery persons, and clinic patients and staff. So the expert opined it could not "be said with any medical certainty where or when he acquired COVID-19 at the time of his positive test." DART also alternatively argued that COVID-19 is not a compensable injury under the workers' compensation statute.

After an evidentiary hearing, the deputy workers' compensation commissioner denied benefits. The deputy noted Dr. Kuhnlein's report was incomplete, did not identify any workplace exposure, and instead rested generally

on an uptick of positive cases at DART. Without more, Collins failed to prove "it is more likely than not" that he "contracted COVID-19 while working for DART." Collins appealed to the commissioner, who affirmed the deputy's decision.

Collins petitioned for judicial review, asking the district court to reverse the commissioner's decision. Framing the issue as one of medical causation, the court found substantial evidence supported the commissioner's finding that Collins failed to prove by a preponderance of the evidence that he contracted COVID-19 in the course of his employment. The court reasoned Collins failed to show "exposure resulted from interaction with specific co-workers," particularly given Collins's interactions with others outside of work. And Collins's expert report "failed to address how COVID-19 is transmitted or the course the virus typically takes between contraction and symptoms, both of which are of particular importance to this case." The district court thus affirmed the commissioner.

Collins now appeals.

II.

We begin by clarifying which ground for judicial review is before us. Over the life of this case, Collins's bases for overturning the commissioner's decision have morphed. In the district court, his petition for judicial review listed ten of the fourteen available grounds within section 17A.19(10). When it came time to brief his judicial-review petition, Collins seemingly narrowed his challenge to paragraphs "f," "i," and "j." *See generally* Iowa Code § 17A.19(10)(f), (i), (j). And the district court's decision only addressed paragraph "f"—whether the commissioner's finding that Collins failed to show causation was supported by substantial evidence. *See id.* § 17A.19(10)(f).

On appeal, Collins urges us to reverse the district court in part because the commissioner's decision was "arbitrary," "wholly irrational," and "incorrect due to ignoring important and relevant evidence." Based on that language, it appears he now seeks reversal under paragraphs "n," "i," and "j." *See id.* § 17A.19(10)(i), (j), (n). But Collins cannot revive these abandoned grounds for judicial review—the district court never ruled on them and Collins did not file a motion under Iowa Rule of Civil Procedure 1.904(2) to expand the court's ruling. So they are not before us. *Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 670–71 (Iowa 2005).

Turning to the only ground that is properly presented—paragraph "f"— "[m]edical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). To reverse, Collins must therefore show that the commissioner's causation finding "is not supported by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f).

By its text, this ground is deferential to the agency. "It is the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). Even if evidence "is open to a fair difference of opinion," that "does not mean the commissioner's decision is not supported by substantial evidence." *Id.* at 394. Indeed, we do not ask "whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Pease*, 807

N.W.2d at 845. And "evidence may be substantial even though we may have drawn a different conclusion as fact finder." *Id.*

Collins argues he offered enough evidence to show he contracted COVID-19 at work. As the claimant, Collins carried the burden to prove "by a preponderance of the evidence that [his illness] arose out of and was in the course of [his] employment." *Arndt*, 728 N.W.2d at 393; *see also Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995). To meet that burden, Collins pointed to an uptick of positive cases at DART around the time he tested positive, imperfect compliance with safety protocols by other DART employees, brief contact with an employee who later tested positive the day before Collins tested positive, the close quarters of his work space, and the strict precautions he took outside of work. To be sure, this evidence suggests that he *could* have been exposed at work. But that is not our inquiry. And elsewhere in the record, we find facts that complicate his narrative and support the commissioner's finding.

For starters, the surge of positives did not reach Collins's department—no other employee in customer service tested positive for COVID-19 between August 15 and December 31, despite the close quarters. DART maintained a list of employees who tested positive and Collins did not interact with any of them leading up to his positive test. During the hearing, Collins testified to having a brief in-person conversation with another employee the day before he tested positive, and that employee also tested positive. But that testimony conflicted with his deposition, where he said his only contact with that employee was "walking down the hallway." As the trier of fact, the commissioner could reject Collins's later telling

of his interaction with the employee as not credible. *See Pease*, 807 N.W.2d at 856.

Collins also traveled out of state a couple of weeks before his positive test. Collins received care at the Mayo Clinic in mid-October and stayed at a nearby hotel for three or four days. While there, he and his partner ordered meals from the hotel or nearby restaurants, which were delivered to their room. Beyond food-delivery persons, Collins and his partner also encountered hotel employees, the driver who shuttled him between the clinic and his hotel, and clinic patients and staff.

DART's medical expert opined that Collins could have been infected with COVID-19 well before his positive test. Because "[t]esting at that time was by PCR analysis[,] which can remain positive for weeks to months after COVID infection," the expert could not say "with any medical certainty where or when [Collins] acquired COVID-19," and it was "certainly possible that he had been infected within weeks to possibly months prior and remained positive by PCR testing." Significantly, Collins experienced respiratory symptoms in September and was offered a COVID-19 test while seeking treatment—he declined.

Collins's competing expert report is not so overwhelming that it overcomes the commissioner's "peculiar province" to "accept or reject an expert opinion." *Pease*, 807 N.W.2d at 845, 847–48. Indeed, Dr. Kuhnlein's report largely punts the headliner issue, citing a causation letter that was never admitted during the agency proceedings and then generally noting the uptick in positive cases at DART. Without more, Collins's causation evidence does not tip the scale from possible to probable.

In all, Collins's recent out-of-state travel, refusal of a COVID test despite having respiratory symptoms in September, and lack of proven exposure to any COVID-positive person while at work provide substantial evidence to support the commissioner's finding that Collins failed to prove he contracted COVID-19 in the course of his employment. And because we affirm the commissioner's decision, we need not consider DART's alternative argument that COVID-19 is not a compensable injury under the workers' compensation statute.

**AFFIRMED.**