# IN THE COURT OF APPEALS OF IOWA

No. 24-0365
Filed April 9, 2025

MONIQUE RODRIGUEZ-FLORES and JAYMES ANTHONY FLORES,
    Plaintiffs-Appellants,

vs.

CITY OF DES MOINES,
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

Plaintiffs appeal the district court's grant of summary judgment dismissing their tort suit. **AFFIRMED.**

Matthew R. Denning of Spaulding & Shaull, P.L.C., Des Moines, for appellants.

Michelle Mackel-Wiederanders, Assistant City Attorney, Des Moines, for appellee.

Considered without oral argument by Badding, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

The day after a January snowstorm, Monique Rodriguez-Flores took her dog on a walk through a city cemetery in Des Moines. She slipped and fell on an already-plowed road in the cemetery, breaking her leg. And so, Rodriguez-Flores sued the City of Des Moines for negligence.[1] The City moved for summary judgment, arguing that it was immune under Iowa Code section 668.10(1)(b) (2021) because it had complied with its snow-and-ice-removal policy. The district court agreed that no material factual dispute existed that the City had complied with its policy requiring snow and ice removal to begin within twelve hours of the snowfall ending and was still within any goal timeframe for completing removal. So the court granted summary judgment and dismissed the suit.

On appeal, Rodriguez-Flores argues that the district court erred by considering whether the City complied with its sidewalk (rather than road) snow-and-ice-removal policy. She contends that because the road policy "does not provide a set timeframe for when the snow and ice removal is to be completed," and there is a material fact dispute about whether any ice removal had been performed by the time of her fall, the City had not established that it complied with the correct policy. But assuming the aspirational completion timeframe is not a part of the City's policy, that absence does not aid Rodgriguez-Flores's cause. The policy then fixes only a start time. And the court correctly concluded that it is undisputed the City had complied with that requirement. We thus affirm.

---

[1] Rodriguez-Flores's husband is also a plaintiff, claiming loss of consortium. Because their arguments at issue here are identical, we refer only to Rodriguez-Flores for readability.

I.

Around 2:00 p.m. one Saturday afternoon in January 2021, Rodriguez-Flores took her dog for a walk in Glendale Cemetery. The cemetery is owned and maintained by the City. It had recently snowed several inches—with the last measurable amount falling around 7:00 p.m. the night before and trace amounts continuing until 6:00 a.m. that morning. But the cemetery roads were plowed by the time Rodriguez-Flores walked on them. About fifteen minutes into her walk, Rodriguez-Flores "stepped aside" the road to let her dog relieve himself. And then as she got back on the road, she slipped and fell, feeling a "a snap in [her] leg, the ankle area."

She did not see any ice but assumes she stepped on "black ice" because "it was slick" and she "just took a step, and [her] foot just went out from under [her]." Rodriguez-Flores could not get back up and telephoned for help. And her broken leg required surgery and a week-long hospitalization.

So Rodgriguez-Flores eventually sued the City for negligence. About five months later, the City moved for summary judgment, arguing that it was immune under Iowa Code section 668.10(1)(b) because it had complied with its snow-and-ice-removal policy.[2] In support, the City submitted relevant excerpts from several documents making up its policy.

The City's Snow and Ice Control Operations Manual includes a provision requiring that removal work at cemeteries and other "Priority 3" locations must

---

[2] The City also asserted emergency-response immunity under Iowa Code section 670.4(1)(k). But the district court did not reach that issue, and the City does not continue to pursue it on appeal.

"[b]egin up to 12 hours after snowfall ends." That manual also includes an introduction warning that while the City "endeavors to maintain adequate traction for public safety and public transportation vehicles and for private vehicles properly equipped for winter driving conditions and properly operated," that "does not mean bare, dry pavement should be expected after each snowfall."

The City's Parks and Recreation Department Snow and Ice Control Operation Manual includes a provision that "[p]lowing begins at . . . cemeteries . . . when there are two inches or more of snow on the streets and more is expected. Ice melt is used on areas around municipal buildings, community recreation centers and any other areas where needed." That manual also includes a provision—consistent with the City's municipal code—that the City must "remove snow and ice from sidewalks" abutting land it owns "within 48 hours following the end of snowfall events."

On top of the written policies, the City submitted deposition testimony of its cemetery manager, who oversees the cemetery division of the City's Parks and Recreation Department. He testified that "typically, after a weather event, we would have everything cleared within 24 hours." And the City submitted an affidavit of the parks worker who was assigned to drive the truck spreading salt on a route that includes Glendale Cemetery, which stated that he salted the cemetery roads on the day that Rodriguez-Flores slipped and fell.

The City argued that the undisputed facts showed it had complied with the policy to start snow removal within twelve hours of the snowfall stopping—which it claimed happened about 5:00 a.m. on the morning of Rodriguez-Flores's fall—since Rodriguez-Flores admitted that the snow had been plowed when she was

walking around 2:00 p.m. that afternoon. The City also contended this was well within its goal of having "property cleared within 48 hours of when the precipitation ends."

Rodriguez-Flores resisted summary judgment by arguing that a fact dispute existed over whether the parkers worker had completed salting the cemetery roads before Rodriguez-Flores slipped and fell. And she contended that under the City's policy, all snow and ice removal had to "be *cleared* no later than twelve (12) hours after the snowfall ends." (Emphasis added.) She also disputed when the snowfall ended—pointing to weather records that the last measurable snowfall was around 7:00 p.m. the night before her fall, which under her interpretation of the policy, would have required all the ice to be removed by 7:00 a.m., long before her fall.

At the summary-judgment hearing, Rodriguez-Flores argued that the twelve-hour time was "irrelevant" and the forty-eight-hour timeframe did not apply because the road on which she slipped and fell was not a sidewalk. She instead pointed to the provision that clearing must begin "when there are two inches or more of snow on the streets and more is expected," and argued that there was a fact dispute whether the City had followed its policy by clearing the ice before her fall since it was uncertain when the salt truck had treated that location.

The district court agreed with the City and granted summary judgment. It reasoned that, when viewed in the light most favorable to Rodriguez-Florez, the record showed that "the snowfall ended at some point between 7:00 and 8:00 p.m." the night before the fall and that Rodriguez-Flores "fell at some time around 2:00 p.m." the next afternoon. The court thus held that "[r]egardless of any other facts at issue in this case, Ms. Rodriguez-Flores'[s] fall was within the timeframe set

forth in the City's snow and ice removal policy." The court rejected Rodriguez-Flores's argument that the "policy states that snow and ice should be removed within 12 hours" because it "clearly states that removal must *begin* within twelve hours, not that it must be *completed* within twelve hours." And the court explained that Rodriguez-Flores's fall was "approximately 18 to 19 hours after the last snowfall," so it was "within the usual 24 hours it takes to clear the cemeteries and well within the City's stated policy of completing snow and ice removal within 48 hours of snowfall." And so, the court held that the City was immune from liability under section 668.10(1)(b) and granted the City summary judgment.

Rodriguez-Flores did not move to reconsider or enlarge the court's decision under Iowa Rule of Civil Procedure 1.904(2). Instead, she appealed.

## II.

We review a district court's grant of summary judgment for corrections of errors at law. *See Humphries v. Trs. of the Methodist Episcopal Church of Cresco, Iowa*, 566 N.W.2d 869, 871 (Iowa 1997). The district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," submitted in support or resistance of the motion, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). "We view the record in the light most favorable to the party opposing the summary judgment motion." *Humphries*, 566 N.W.2d at

871. Yet our supreme court has warned, "[s]ummary judgment is not a dress rehearsal or practice run for trial but rather the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754–55 (Iowa 2021) (cleaned up).

The City moved for summary judgment under Iowa Code section 668.10(1)(b), which grants immunity to state and municipal governments for negligence claims based on:

> The failure to remove natural or unnatural accumulations of snow or ice, or to place sand, salt, or other abrasive material on a highway, road, or street if the state or municipality establishes that it has complied with its policy or level of service for snow and ice removal or placing sand, salt, or other abrasive material on its highways, roads, or streets.

Iowa Code § 668.10(1)(b). A city seeking to avoid liability under this statute must show: "(1) the snow or ice in question was on a highway, road, or street; (2) the city had a policy or level of service for snow and ice removal; and (3) the city complied with that policy or level of service." *Humphries*, 566 N.W.2d at 872. All agree that the first two requirements are satisfied here—Rodriguez-Flores slipped and fell on a road and the City had a snow-and-ice-removal policy. The only question is whether the City complied with its policy on the time of Rodriguez-Flores's fall.

Rodriguez-Flores argues that she generated a factual dispute on this question because it is uncertain whether the City had performed any ice removal on the cemetery road by the time of her fall. And she contends that this fact dispute means that "a fact question exists as to whether the City complied with its snow

and ice removal policies." But the flaw in her logic is that she never explains why the fact dispute about the completion of ice removal matters. And like the district court, we conclude that it does not matter because it is undisputed that the City had *started* its snow and ice removal by the time of Rodriguez-Flores's fall.

Rodriguez-Flores makes much of the district court's reference to the fact because her fall happened "approximately 18 to 19 hours after the last snowfall," it was "within the usual 24 hours it takes to clear the cemeteries and well within the City's stated policy of completing snow and ice removal within 48 hours of snowfall." She contends that neither timeframe is in the City's policy. While she is correct that neither timeframe is in the City's written policy for roads, we need not resolve whether either still qualifies as a part of the City's policy.[3] If they are, then as the district court reasoned, the City had complied with either timeframe and was entitled to immunity. If they are not, then they are irrelevant to whether the City complied with the rest of its policy. But that irrelevance would not mean that the City did not comply with the rest of its policy.

---

[3] Rodriguez-Flores argues that the only evidence in the record of a forty-eight-hour completion timeframe is in the written policy for clearing of sidewalks. The City asserted in its statement of undisputed material facts (and much of its briefing since) that "[t]he goal for cemeteries is to meet the requirement of private property owners, to have publicly owned property cleared within 48 hours of when the precipitation ends." Yet its record citation only supports that policy applying to sidewalks. The twenty-four-hour completion goal is supported by deposition testimony from the cemetery manager. But our court has held that even written provisions that are merely goals need not be complied with to satisfy the compliance requirement of section 668.10(1)(b). *See Schoborg v. Anderson*, 548 N.W.2d 180, 182 (Iowa Ct. App. 1996) (holding that policy provision that "the city should apply sufficient sand and salt to curves so they 'can be safely negotiated' . . . is a goal, not a standard of care," and reasoning that a contrary holding "would eviscerate the statutory immunity allowed municipalities").

And indeed, the City did comply with the rest of its snow-and-ice-removal policy. As the court correctly explained, the City's policy "clearly states that removal must *begin* within twelve hours, not that it must be *completed* within twelve hours."[4] Rodgriguez-Flores has never disputed that the City had timely started its snow removal—indeed she testified that the roads were plowed when she was walking on them. She has only alleged that the City may not have completed its removal efforts by properly salting or clearing the ice. But even if the City had not completed removal, that conduct would not violate a policy setting a required timeframe to start the removal.

What's more, the City's policy makes clear that it does not strive for "bare, dry pavement." Its goal is to "maintain adequate traction for . . . vehicles"—not walking on its roads. And section 668.10(1)(b) does not set any requirement that the City's policy must meet any particular standard for snow removal or include a completion timeframe to qualify for the immunity. The statute only requires that a city have an applicable policy—with whatever snow-and-ice-removal provisions the city selects—and that the city complies with that policy. *See* Iowa Code § 668.10(1)(b); *Hansen v. State*, 528 N.W.2d 547, 549 (Iowa 1995) ("The language

---

[4] On appeal, Rodriguez-Flores also points to the policy provision that "[p]lowing begins at . . . cemeteries . . . when there are two inches or more of snow on the streets and more is expected. Ice melt is used on areas around municipal buildings, community recreation centers and any other areas where needed." But she did not make this argument in her summary-judgment papers, instead raising it for the first time at the hearing. And the district court's ruling did not consider whether the City complied with this provision, and she never filed a 1.904(2) motion asking the court to consider the issue. So it is not preserved for appellate review. *See Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 670–71 (Iowa 2005). Even if it were preserved, that provision too focuses on when the City's removal efforts needed to start—an issue over which there is no material factual dispute.

in [section 668.10(1)(b)] is straightforward.  If procedures adopted for snow and ice removal are followed, the governmental entity is exempt from tort liability regarding those practices.").

Because Rodriguez-Flores has generated no material factual dispute that the City complied with its snow-and-ice-removal policy, the district court correctly granted the City summary judgment under section 668.10(1)(b).

**AFFIRMED.**